## EQUITABLE TRUST CO. v. ÆTNA INDEMNITY CO.

(Circuit Court, E. D. Pennsylvania. February 10, 1909.)

### No. 250.

1. PRINCIPAL AND SURETY (§ 82*) — CONSTRUCTION AND OPERATION — SCOPE OF OBLIGATION.

Plaintiff contracted to insure the title of mortgagees who furnished money to be used by a builder in building 62 houses on land owned by him, and of purchasers of such houses, to protect them from defaults of the owner in the building operation and from liens. The owner, with defendant as surety, executed a bond to plaintiff to indemnify it against loss on any policies it might issue, including any sums it might advance for material and labor for the completion of the buildings and improvements. Defendant knew that plaintiff was to handle and pay out the fund used in the entire building operations, and that subcontracts had been let for parts of the work covering all of the houses. Held, that defendant's liability was not restricted to losses incurred by plaintiff on the particular houses on which it had actually issued policies, but extended to the entire operation, which it had contracted to see completed.

[Ed. Note.—For other cases, see Principal and Surety, Dec. Dig. § 82.*]

2. PRINCIPAL AND SURETY (§ 100*)—CONSTRUCTION AND OPERATION—LIABILITY OF SURETY.

Overpayments made to subcontractors on vouchers indorsed by defendant's principal in the bond, or changes in the plans made by him, did not release it from liability; the purpose of the bond having been to indemnify plaintiff from loss by reason of its insuring against his defaults.

[Ed. Note.—For other cases, see Principal and Surety, Dec. Dig. § 100.*

Discharge of surety by alteration of instrument, see note to Zeigler v. Hallahan, 66 C. C. A. 6.]

**3. PRINCIPAL AND SURETY (§ 109\*)—CONSTRUCTION AND OPERATION—LIABILITY OF SURETY.**

    Additional security, taken by plaintiff in the way of bonds from subcontractors, were matters outside of the contract of defendant, and the failure to collect on such bonds did not affect its liability.

    [Ed. Note.—For other cases, see Principal and Surety, Dec. Dig. § 109.\*]

At Law. On motions for judgment non obstante veredicto and for new trial.

Loughlin & Bracken, for plaintiff.
Gustavus Remak, Jr., for defendant.

HOLLAND, District Judge. This suit was instituted to recover on a bond executed July 2, 1906, by William H. Morrison, of Philadelphia, a builder, and the Ætna Indemnity Company, in favor of the plaintiff, for the sum of $20,000. Its purpose generally was to indemnify the plaintiff against any loss arising from causes therein specified, to the extent of $20,000, on account of an operation in which Morrison was engaged in the building of 62 houses in the city of Philadelphia. The case was tried before a jury in this district, and a verdict rendered in favor of the plaintiff for the full amount of the bond, together with interest from October 19, 1907. Points to charge the jury were submitted to the court by the defendant to the number of 21, all of which were refused. Exceptions were taken to the refusal and to some portions of the charge of the court, upon which the defendant has predicated 24 reasons for a new trial; the first 3 reasons being merely formal. He also filed a motion for judgment non obstante veredicto under the Pennsylvania practice act of April 22, 1905 (P. L. 286), authorizing such a motion where a request for binding instructions has been submitted and refused by the court.

The first 3 reasons for a new trial are: (1) The verdict was against the law; (2) was against the evidence; and (3) was against the weight of the evidence—none of which can be sustained in this case. The remaining 24 reasons for a new trial are based either upon an alleged erroneous charge of the court or a refusal to instruct the jury affirmatively on points submitted by the defendant. If the defendant be right in the contention, either as to the error committed by the court in its charge to the jury or its refusal to affirm the points submitted, then there would be no liability whatever on the part of the defendant, and it would be entitled to judgment non obstante veredicto. This, therefore, is the only question that need be considered, and all the alleged errors entitling the defendant to judgment raise three questions, the consideration of which will dispose of the whole case.

1. The defendant is not liable on the bond, because it applied only to losses suffered by the plaintiff by reason of the policies of title insurance issued by it during the construction of the said buildings or municipal improvements, or within the lawful time allowed for filing claims on account of such constructions, and title policies were not issued on the whole operation, to wit, the 62 houses to be built, but

---

that policies were only issued by the plaintiff company on 41 houses; and, second, that the declaration was for expenditures on 41 houses, and, evidence being permitted of expenditures on 62 houses, there was a fatal variance between the declaration and the proofs.

William H. Morrison had secured the ownership of a tract of land "on the west side of Fifty-Seventh street, in Philadelphia, extending from Spruce street to Pine street, and extending of that width westward 240 feet, upon which he was about to erect houses." He applied to the plaintiff company for the purpose of having it issue policies of insurance, insuring the title to the property, and insuring holders of mortgages on the same against loss by reason of any claims or failure to complete the buildings. As one of the inducements for the plaintiff company to issue its policies, Morrison, the contractor, and the Ætna Indemnity Company, executed a bond to it, obligating themselves in the sum of $20,000 to indemnify the plaintiff company against any loss set forth in the recital of the defendant's bond on the policies issued by the plaintiff company during the construction of the said buildings or municipal improvements, or within the lawful time allowed for filing claims on account of said construction. Following the recitals the conditions of the bond covered all claims insured against in the plaintiff's policies issued to mortgagees, "including all such sums of money as may be advanced and paid by said company for materials and labor for the construction and completion of said buildings or municipal improvements," etc. This, it was held at the trial, was not restricted to sums of money advanced for material and labor for construction and completion of buildings only, upon which the plaintiff company had issued its policies of insurance, but also comprehended all expenditures for labor and material in the completion of the whole operation, upon which it had obligated itself to issue policies and for which it had been paid.

The fund for carrying out the operation was raised by borrowing part of the money from the Hamilton Trust Company and part from an individual by the name of William Conway, and the balance was loaned by the plaintiff company, amounting to a total of $135,000. The subcontractors each bid for the whole of his line of work upon the entire operation, and agreed to accept a pro rata share of the fund raised, and the balance in deferred payments in the shape of liens on the buildings after the mortgages given to raise the cash fund. The total cash fund raised was held by the plaintiff company as a further guaranty for the completion of the work on the part of Morrison. The defendant was present when the arrangement was made and the contracts entered into, and it knew how the fund was being raised and the mode of conducting the operation. It knew that in case of Morrison's default there could be no separation of the fund or the work for the purpose of completing the houses upon which policies might have been issued alone; nor was there any such contemplation, as the plaintiff company had been paid in advance the consideration for the issuing of all the policies on the whole of the 62 houses, and there is no doubt but that the defendant company executed this bond with the understanding that the clause which provides for an

indemnity "for all such sums of money as may be advanced and paid by the said company for materials and labor for the construction and completion of said building or municipal improvements," etc., included such expenditures as well for the houses in the operation upon which the policies had not been actually issued and signed by the plaintiff company as upon those upon which the policies were issued and in the hands of holders of the mortgages.

2. We think that proof was properly admitted showing the expenditure of the plaintiff company for the completion of the 62 houses, under the averments in the plaintiff's statement. It claims, as set forth in the statement:

"That all said payments represent loss and damage sustained by plaintiff as the insurer on its said policies, and were the direct result and consequence of the default hereinbefore averred on the part of the said Morrison in the erection of the said buildings within the time stipulated in the said policies."

The allegations here set forth not only include whatever expenditures to which the plaintiff was put by reason of the issuing of the policy, but also included the moneys expended by reason of the failure of Morrison to complete the operation; and it was not necessary, as claimed by the defendant, for the plaintiff to amend its statement in order to enable it to produce evidence of cost of completion of the houses upon which policies had not been issued.

3. The defendant was entitled to binding instructions, because material departures were shown (by undisputed evidence of officers and witnesses of the plaintiff) from the agreement for completing the operation, to which defendant's bond related, participated in and made possible only by the consent of the plaintiff, without the knowledge or consent of the defendant.

The plaintiff company, for the purpose of further securing itself against a possible failure of Morrison to complete the operation, secured title to the land upon which the operation was being conducted, and it further required Morrison to permit it to hold the fund raised for the purpose of building the houses, and also had assigned to it the subcontractors' bonds given to the contractor, guaranteeing the faithful performance of the work of the subcontractors in accordance with plans and specifications. The subcontractors were paid upon vouchers indorsed by Morrison and approved by a representative of the plaintiff company. It appeared, in the course of the construction of the work, that some of the subcontractors, through Morrison, which was approved by the representative of the plaintiff company, secured overpayments. It further appeared that Morrison had altered the plans as to one house, and erected a three-story building, instead of one of two stories, as required by the original plans and specifications, and there was another change, in that an iron fence, more expensive than that called for by the specifications, was erected as the operation was finally completed; and it further appeared that, after Morrison abandoned the operation, some of the subcontractors failed in the performance of their contract, and in order to complete the work it was necessary for the plaintiff company to pay a greater sum for the completion of the particular work in which the subcontractor failed.

It further appeared, upon the failure of the subcontractors to carry out their contract in accordance with the plans and specifications, that the plaintiff company employed a lawyer for the purpose of suing out the subcontractors' bonds. One of the most prominent members of the Philadelphia bar was employed for that purpose, and the suits are now pending in the court of common pleas of Philadelphia county. It is claimed, however, that the plaintiff company, through its attorney, failed to bring the suits in proper time to enable it to recover.

It was contended by the defendant that it was not liable on its bond because (1) of these overpayments to the subcontractors; (2) because of the change of plan in adding a third story to one house and changing the kind of fence around the operation; (3) in paying advance sums to subcontractors for the completion of the work; and (4) for a failure to promptly collect on the bonds of the delinquent subcontractors.

Any overpayments to subcontractors made by Morrison might affect the bonds given him to guarantee the performance of the work undertaken by these subcontractors. Morrison had control and management of the subcontractors and their work. The plaintiff had secured possession of the fund, in order that it might be assured of its being properly used for the completion of the operation, and any payment Morrison might direct in carrying out the work could not affect defendant's liability on its bond to the plaintiff, because there was nothing in the bond binding the plaintiff to any particular course of supervision over Morrison's actions with regard to the disbursement of the fund.

All the plaintiff company did in the way of securing title to the real estate, handling the fund for the payment of the subcontractors as they progressed with the operation, and having the bonds of the subcontractors assigned to it, was for the purpose of further insuring the completion of the operation by Morrison; and while it did not at all alter or touch any stipulation in the defendant's indemnity bond to the plaintiff, yet they were all calculated to insure the performance of the agreement on the part of Morrison, and directly and materially lessened the hazard which the defendant assumed in executing its bond to the plaintiff. And as to the adding of a third story to one house and changing the fencing, which was done by Morrison himself, the plaintiff is not responsible. If a violation at all, it was the act of Morrison, whose faithful performance the defendant company had guaranteed by the execution of its bond.

As to the failure of the plaintiff company to collect on the subcontractors' bonds, we do not see that the defendant has any right to complain, because it is a matter entirely outside of the bond of indemnity upon which the plaintiff is suing the defendant. It is simply an additional security taken by the plaintiff company to further protect it against any failure on the part of Morrison, to which no reference is made by the defendant in its bond to the plaintiff, and, again, it does not yet appear that the plaintiff will not succeed in collecting the amount specified in the subcontractors' bonds; but at any rate the evidence showed that the plaintiff employed one of the leading members of the Philadelphia bar, now dead, and placed in his hands

the bonds, with direction to collect the same, and he proceeded on the bonds, which have not yet been prosecuted to judgment. The defendant executed a bond to indemnify plaintiff against Morrison's failures, and it cannot now be relieved of its liability on that bond because plaintiff did not prevent Morrison from failing through the additional security which it had taken.

We do not think there is any other question that need be considered, with the exception of the question of interest. It is conceded by the plaintiff that there was error in the claim for interest from October 19, 1907, when it should have been only from the date when suit was brought, to wit, June 28, 1908. Accordingly the verdict should be reduced in the sum of $830, which would be interest on the amount for which the defendant would be liable from October 19, 1907, to June 28, 1908.

It is therefore hereby ordered that, if the plaintiff file a remittitur for this amount within 10 days, a new trial will be overruled, and the motion for judgment non obstante veredicto refused; otherwise, a new trial will be granted.