[Civ. No. 10521.   First Appellate District, Division Two.—January 25, 1938.]

S. F. PELLAS, Respondent, v. THE OCEAN ACCIDENT & GUARANTEE CORPORATION, LTD. (a Corporation), Appellant.

Redman, Alexander & Bacon and Herbert Chamberlin for Appellant.

Brobeck, Phleger & Harrison for Respondent. .

SPENCE, J.—Plaintiff sought to recover upon a fidelity bond issued by defendant. The cause was tried by the court sitting without a jury and from a judgment in favor of plaintiff for $20,000 and interest, defendant appeals.

The evidence appears to be without conflict in all of its material aspects. Plaintiff was an importer of coffee with his offices in San Francisco. He bought large quantities of coffee during 1931 and 1932 from one Hoyos, an exporter of· coffee at Manizales, Colombia. Prior to the issuance of the bond by defendant, plaintiff had made inquiry through banks concerning the financial standing and reputation of Hoyos and had received excellent reports. The bond was dated December 9, 1931, and defendant thereby agreed to indemnify plaintiff ''against all such losses or damage as the Assured may sustain through, by reason of, growing out of, or in connection with the purchase by the Assured of goods, merchandise or commodities from or through any person, firm or corporation named in the schedule forming part of this bond, as a result of or through fraud, dishonesty, embezzlement or any other criminal or wrongful act of any such person, firm or corporation, or agent, officer, or employee thereof (hereinafter termed 'correspondent') while the bond is in force''. The bond was in the total sum of $145,000 and the total premium thereon was $1957.50. The schedule in said bond named four correspondents and specified the coverage with respect to each. The amount of coverage with respect to Hoyos was the sum of $20,000.

Thereafter plaintiff made purchases of coffee from Hoyos in each month from December, 1931, to and including September, 1932. Payments were made for such purchases either upon railroad receipts or mill receipts. It appears that there

were three methods in vogue for the payment for purchases from correspondents. One of the methods is not involved here, but it consisted of payment in advance without documents. Under this method, the seller (or correspondent) was authorized to draw upon the buyer at once, the drafts being payable at the time of future shipment, either 30, 60 or 90 days thereafter. Another method was by payment upon delivery of a railroad receipt. Under this method, the seller did not receive payment until the coffee had been actually shipped to the purchaser. Such payment was received at a local bank upon presentation· of the railroad receipt. The third method was by payment on delivery of a mill receipt. Under this method the seller received payment at a local bank upon presentation of a mill receipt, issued by the administrator of a mill, showing that coffee was on hand for the account of the purchaser and would be shipped within 30 days after drying and processing.

The first and third methods were advantageous to the seller as payment was received prior to shipment. The railroad receipt method was advantageous to the purchaser as the time of payment was deferred until shipment and the seller's obligations were completed before payment. It may be stated that, under the mill receipt method, the seller's obligations were not terminated at the time of payment as he was thereafter obligated to pay for milling the coffee, preparing it for export, packing it, marking it and shipping it through a shipping agent designated by the purchaser. There was correspondence between plaintiff and Hoyos regarding the method to be used for payment and it was finally agreed between them that one-half of the payments should be made upon railroad receipts and one-half should be made upon mill receipts. This agreement was followed out. The evidence shows that the mill receipt method was a customary method of doing business and that most of plaintiff's business with his several correspondents was done under this method.

During 1932, there was some delay in the shipment of coffee by Hoyos in certain cases where payment had been made upon mill receipts. There was a great deal of correspondence between plaintiff and Hoyos and between plaintiff and the Banco de Colombia at Manizales. This correspondence indicated that Hoyos was having financial difficulties owing to delay in collecting his accounts receiv-

able. Plaintiff became alarmed in October, 1932, and ordered the Banco de Colombia to have an auditor make an investigation. This was done and plaintiff received a letter from the bank on October 31, 1932, which indicated the probability of a serious shortage in the amount of coffee in transit and in the mill to satisfy the mill receipts upon which payments had been previously made. Plaintiff notified defendant on that day and subsequently filed formal proof of loss after it had been definitely determined that a shortage existed and the exact extent thereof.

The trial court made findings with respect to the wrongful acts of Hoyos and the resulting loss to plaintiff in a sum exceeding $20,000. None of these findings are attacked on this appeal. It appears from the findings and the evidence in support thereof that Hoyos had leased a mill from its owner, that he had caused spurious mill receipts to be issued, that he had not sufficient coffee in said mill to satisfy said mill receipts and that he had finally withdrawn all coffee from the mill and converted it to his own use.

■ Appellant first contends that ''the trial court committed prejudicial error in refusing, during the course of the trial, to transfer the cause to the United States District Court''. In this connection, further facts should be stated. Shortly after the filing of the action, appellant petitioned for removal on the ground of diversity of citizenship, claiming that it was a citizen of Great Britain and that respondent was a citizen of California. An order of removal was made but respondent thereafter filed an affidavit in the United States District Court showing that he was an alien and the cause was remanded to the state court. During the cross-examination of respondent upon the trial of the cause, it appeared that long after the filing of the action and the entry of the order remanding the cause, he had become a naturalized citizen of the United States. Appellant thereupon filed a new petition for removal, which was denied by the trial court and it is to this ruling that appellant's contention is directed. We find no error in the trial court's ruling. The petition was based solely upon diversity of citizenship and it is well settled that appellant was not entitled to such removal unless the required diversity existed, not only at the time the petition was filed, but also at the time of the commencement of the action. (*Gibson* v. *Bruce*, 108 U. S. 561 [2 Sup. Ct. 873, 27 L. Ed. 825]; *Mansfield C. & I. M.*

*Ry. Co.* v. *Swan,* 111 U. S. 379 [4 Sup. Ct. 510, 28 L. Ed. 462]; *Houston etc. R. Co.* v. *Shirley,* 111 U. S. 358 [4 Sup. Ct. 472, 28 L. Ed. 455]; *Akers* v. *Akers,* 117 U. S. 197 [6 Sup. Ct. 669, 29 L. Ed. 888]; *Stevens* v. *Nichols,* 130 U. S. 230 [9 Sup. Ct. 518, 32 L. Ed. 914]; *Jackson* v. *Allen,* 132 U. S. 27 [10 Sup. Ct. 9, 33 L. Ed. 249]; *Mattingly* v. *Northwestern Virginia R. R. Co.,* 158 U. S. 53 [15 Sup. Ct. 725, 39 L. Ed. 894].) It is conceded here that the required diversity did not exist at the time the action was commenced. Appellant cites and relies upon *Fritzlen* v. *Boatmen's Bank,* 212 U. S. 364 [29 Sup. Ct. 366, 53 L. Ed. 551]; *Powers* v. *Chesapeake & Ohio Ry. Co.,* 169 U. S. 92 [18 Sup. Ct. 264, 42 L. Ed. 673], and the Removal Cases, 100 U. S. 457 [25 L. Ed. 593], but we find none of these in point. Under the rule of the authorities first above mentioned, no right to removal came into existence in the present case at any time and the cases dealing solely with the question of the time for exercising a right of removal have no application here. (See *Anaconda Copper Min. Co.* v. *Butte-Balaklava Copper Co.,* 200 Fed. 808, 809.)

Appellant further contends that "the judgment lacks evidentiary support for the reason that the bond terminated before plaintiff suffered any loss or damage". In our opinion, this contention is without merit. It is based upon the following provision of the bond: "Upon the discovery by the Assured of any dishonest act on the part of any correspondent, this bond shall terminate, without any action on the part of the Surety, as to any subsequent purchases by or through such correspondent."

Appellant sought to raise the issue of termination by alleging that long prior to October 31, 1932, respondent discovered facts which indicated the dishonesty of Hoyos. The trial court found that on October 31, 1932, and not before that time, respondent first discovered facts which indicated the dishonesty of Hoyos and that he did not discover any dishonest act at any time prior thereto. No further transactions were thereafter had with Hoyos. The foregoing findings of the trial court are amply sustained by the evidence and are conclusive on the defense of termination. Appellant sets out at length the correspondence from which it appears that respondent had previously learned of the delay in performance by Hoyos and also of Hoyos' financial embarrassment. But neither knowledge of delay nor knowledge of financial embar-

rassment constituted "discovery of a dishonest act". The obtaining of the mill receipts did not terminate the obligations of Hoyos under the mill receipt method above described and it was entirely possible that his financial embarrassment accounted for the delay in shipments by making it impossible for him to meet his further obligations which required further expenditures by him before the coffee, represented by such receipts, could be shipped to respondent. But assuming, without deciding, that the correspondence and other evidence might have given rise to a suspicion of dishonesty, we are of the opinion that such grounds for suspicion did not constitute "discovery of a dishonest act" within the meaning of the bond. (*Pacific Coast A. Bureau* v. *Indemnity Ins. Co.*, 115 Cal. App. 583 [2 Pac. (2d) 218] ; see, also, *Andrews* v. *Minter Coal & Coke Co.*, 90 Ind. App. 320 [168 N. E. 869] ; *Outlook Farmers' Elevator Co.* v. *American Surety Co.*, 70 Mont. 8 [223 Pac. 905] ; *Gilmour* v. *Standard Surety & Casualty Co.*, (Mass.) 197 N. E. 673.)

Under the foregoing heading, appellant argues that "the entire case of plaintiff is bottomed on the proposition that he did not believe and had no reason to believe that Hoyos managed and controlled the mill which issued the receipts forming the basis of plaintiff's claim". Respondent disputes this assertion claiming that the question was not material and also pointing to the trial court's findings on the subject. We need not discuss its materiality for if it was material, it became so only under appellant's affirmative defense of termination. The burden of proof was upon appellant to prove this defense and the trial court was justified in concluding that it had not sustained that burden. The trial court's findings were adverse to appellant on the above-mentioned proposition as well as upon all others having to do with the issue of termination, and a review of the record shows that the evidence was ample to sustain these findings.

Appellant further contends that "the judgment lacks evidentiary support for the reason that plaintiff did not give timely notice of discovery to defendant or file timely proof of loss". This contention is closely related to the contention previously discussed for it is based upon appellant's claim that respondent discovered dishonesty on the part of Hoyos prior to October 31, 1932. The bond provided "Upon the personal discovery by the Assured of any dishonest act on the part of any Correspondent the Assured shall, at the

earliest practicable moment, and at all events not later than five days after such discovery, give written notice thereof addressed to the Surety at its Pacific Coast Branch. Affirmative proof of loss under oath, together with full particulars of such loss, shall be filed with the Surety at its Pacific Coast Branch within three months after such discovery." It is unnecessary to discuss this contention further for it is apparently conceded that if the dishonesty of Hoyos was not discovered until October 31, 1932, the notice of discovery was given and the proof of loss was filed within the time provided by the bond. As heretofore stated, the trial court found that the dishonesty of Hoyos was not discovered until October 31, 1932, and that finding is sustained by the evidence.

■ It is next contended that "the judgment lacks evidentiary support for the reason that plaintiff's loss was caused by his own wilful acts". It is somewhat difficult to ascertain appellant's precise claim under this heading. Appellant again claims that the evidence was insufficient to sustain certain findings heretofore discussed. Appellant then relates certain facts, claiming that said facts show that respondent "was clearly guilty of wilful exposure, gross negligence and misconduct". All of the findings on issues bearing any relation to these subjects were adverse to appellant and were sustained by the evidence. Furthermore, the evidence was sufficient to sustain the trial court's finding that there was not even negligence on the part of respondent, but if the evidence had been sufficient to sustain a finding of negligence and the trial court had made such a finding, such negligence would not have exonerated appellant. (Civ. Code, sec. 2629, now sec. 533, Insurance Code; *I. Upham Co.* v. *United States Fid. & Guar. Co.*, 59 Cal. App. 606 [211 Pac. 809].)

■ The further contention is made that "the judgment lacks evidentiary support for the reason that defendant was exonerated from liability by the act of plaintiff in settling and compromising his claim against Hoyos". This contention is based upon the following provision of the bond: "If the Assured shall sustain any loss that might be made the basis of a claim hereunder, and shall settle or compromise such loss with the Correspondent without first securing the consent of the Surety to such settlement or compromise, this bond shall thereupon become void from the beginning as to such Correspondent." Assuming, without deciding, that

this defense was properly pleaded, we are of the opinion that there was no evidence which would have supported a finding sustaining such defense. The evidence merely showed that respondent had taken certain collateral security from Hoyos as a guarantee of his obligations. Respondent did not relinquish any rights against Hoyos at any time and it is entirely clear that he did not "settle or compromise" the loss. The mere taking of collateral security did not have the effect of exonerating appellant. (*Equitable Trust Co.* v. *Aetna Indem. Co.*, 168 Fed. 433; *McRae Grocery Co.* v. *Independence Indem. Co.*, 33 Fed. (2d) 494 [66 A. L. R. 338]; *Oxley* v. *Storer*, 54 Ill. 159; Pingrey on Suretyship, sec. 123.)

The next contention of appellant is that "plaintiff's cause of action was barred by his failure to commence action within six months after proof of loss was filed". The bond provided: "Legal proceedings for recovery hereunder may not be brought until three months have elapsed after such proof of loss has been filed with the Surety, nor brought at all unless begun within six months after such proof of loss has been filed with the Surety." Respondent claimed and the trial court found that proof of loss was filed on January 7, 1933, and that the action was commenced on June 28, 1933. These findings are sustained by the evidence and they support respondent's claim that the action was commenced within the time provided. Appellant takes the position that certain preliminary correspondence constituted proof of loss; that any informality in the proof had been waived by their failure to object thereto; and that the action was barred because not brought within six months after the receipt of such correspondence. This position is untenable. In the correspondence prior to January 7, 1933, respondent stated that the exact amount of the loss would be submitted as soon as full particulars could be obtained and asked that appellant send him the "usual forms of proof of loss" in order that he might file the same as soon as he was able to secure full particulars of the loss and to determine the exact amount thereof. He also asked that appellant advise him "definitely the time limit within which proof of loss must be filed". This letter was obviously not intended to be the "affirmative proof of loss under oath, together with full particulars of such loss" as contemplated by the bond. The foregoing letter was not answered by appellant but respondent prepared his formal proof of loss after receiving

full particulars and filed it on January 7, 1933. Receipt thereof was acknowledged by appellant by letter dated January 13, 1933. We therefore conclude that appellant's claim that the action was barred is wholly devoid of merit.

■ The final contention of appellant is that "the judgment erroneously allowed interest from January 7, 1933". We find no error in the allowance of such interest. The amount of damage which respondent had sustained was certain or was at least capable of being made certain by calculation at the time the proof of loss was filed on January 7, 1933. All that was necessary in order to compute the amount of such damage was to ascertain the value of the coffee which had not been delivered. Respondent was therefore entitled to such interest. (Civ. Code, sec. 3287; *Olcovich* v. *Grand Trunk Ry. Co.,* 179 Cal. 332, 333 [176 Pac. 459]; *Brandenstein* v. *Jackling,* 99 Cal. App. 438 [278 Pac. 880].) The fact that respondent had taken security for Hoyos' performance of his obligations is immaterial as the security had been fully realized upon before the proof of loss was filed and furthermore, even the existence of an unliquidated offset would not have affected respondent's right to interest. (*Hansen* v. *Covell,* 218 Cal. 622 [24 Pac. (2d) 772, 89 A. L. R. 670].) ■ Nor is there any merit in the claim that, under the terms of the bond, interest should not have been allowed in any event prior to April 7, 1933. The bond merely provided that "Legal proceedings for recovery hereunder may not be brought until three months' have elapsed after such proof of loss has been filed with the Surety." This provision did not defer the date upon which payment was to become due but only deferred the date for the commencement of legal proceedings. The situation here is clearly distinguishable from that in *Kahn* v. *Allemannia Fire Ins. Co.,* 16 Cal. App. (2d) 39 [60 Pac. (2d) 149], where the policy provided "that *the loss should be payable* 'in thirty days after the amount has been sustained, either by agreement or by appraisement' ''. (Italics ours.)

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 24, 1938, and an ap-

plication by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 25, 1938.