[Civ. No. 3246.   Fourth Dist.   Jan. 14, 1944.]

CHARLEY STILLWELL, Respondent, v. R.C.A. MANU-
FACTURING COMPANY, INC. (a Corporation) et al.,
Appellants.

Crider, Runkle & Tilson for Appellants.

Fred A. Wilson for Respondent.

BARNARD, P. J.—This is an action for damages. The plaintiff was the owner of a building in which he operated a moving picture theatre at Big Bear Valley, a summer resort in the San Bernardino Mountains. The sound system used in this theatre was manufactured and serviced by defendant R.C.A. Manufacturing Company. On June 21, 1941, at the plaintiff's request, the defendant corporation sent its service man, C. L. Cronkhite (sued herein as Roy Kronkhiet), to repair this sound equipment. In the course of the repairs in the projection room of the theatre Cronkhite laid a hot electric soldering iron upon a work bench. Shortly thereafter, one Carl Teschan, who was employed by the plaintiff to operate the projection machine and who on this occasion had let Cronkhite into the theatre to do the repair work, undertook to rewind a film from one spool to another. As this operation was being completed the last few feet of the film flopped around, as is customary in such cases, and the end of the film came in contact with the hot iron, starting a fire which completely destroyed the building and its contents.

In this action which followed the plaintiff alleged that his loss was caused by the negligence of the defendants. Among other things, the defendants alleged contributory negligence in the manner in which the projection room was maintained and also in that the fire was caused by the negli-

gence of Teschan, which should be imputed to the plaintiff as his employer.

The court, sitting without a jury, found, among other things, that the fire and the resulting damage were caused solely by the negligence of the defendants and that Teschan was guilty of no negligence which proximately contributed to the loss and damage. The court also found that the value of the building was $10,000, that the value of the equipment was $10,000, that the loss of profits for the year 1941 was $4,000, and that the loss of rent for two small rooms in the front of the theatre building was $600. Judgment was entered accordingly and the defendants have appealed.

It is conceded that the evidence is sufficient to support the finding of negligence on the part of Cronkhite. Appellants' main contention is that the evidence conclusively shows that Teschan was also guilty of negligence which proximately caused the fire, and that since he was acting at the time in the course of his employment by the respondent his negligence is chargeable to him and prevents a recovery.

The projection room of this theatre was 18 feet long and 10 feet wide, with an 8-foot ceiling. The projection machines which were being repaired stood at the wall of the room which was nearest the stage and along the opposite wall was a work bench. On this work bench was a rewind machine which was operated by hand. This consisted of two spindles placed about 30 inches apart on the work bench, on one of which the loaded spool was placed while the empty spool was placed on the other. Midway between the two spindles a frosted glass was sunk in the bench with an electric lamp underneath, which was used for patching film. There is no evidence that this patch light was turned on on this occasion. The electric soldering iron had been laid on this bench between this patch light and one of the spindles. As Teschan was completing the rewinding of the film in order that it might again be run through the projection machine in a further test thereof, the end of the film came into contact with the hot iron in this position. There is evidence that Teschan had had eight years' experience as a projectionist; that for some years he had operated an electrical appliance store in the daytime while working in this theatre at night, that altogether he had had some twenty-seven years' experience in some form of the electrical business; that he was somewhat familiar with electric soldering irons; and

that he knew they would retain their heat for some time after the current was turned off.

The appellants argue that Teschan was fully aware of the hazard of allowing the film to touch the hot iron; that he must have known of the inflammable nature of such film; that he knew that this soldering iron had been used by Cronkhite only a few moments before the rewind operation was started; that the soldering iron was in the direct line of his vision as he was operating the rewind machine; that he either saw it or should have seen it; and that it must be held that he was guilty of negligence in allowing the film to come in contact with the iron.

The repair work in question extended over a period of about four hours. Cronkhite testified that he had used the soldering iron for about three-quarters of an hour, during which he had disconnected it a number of times, and that after the projection machine was reassembled and shortly before the fire occurred he plugged the soldering iron in again in order to knock off some solder from one of the amplifier lids. It would appear that after this use he laid the iron on the work bench in the position where it caused the damage.

Teschan testified that he saw Cronkhite use the soldering iron earlier in the afternoon; that he knew it was heated while it was being used; that Cronkhite was using the iron at the projection machines on the opposite side of the room from the bench; that from time to time Cronkhite laid the iron on the floor and at other times stuck it in the standards of the projection machines; that he never saw Cronkhite take the soldering iron over near the work bench; that he never saw the soldering iron on or near the work bench until the fire broke out; that he did not see the soldering iron while he was rewinding the film; and that he did not see it until "the flash from the ignited film lit up the bench like a power house on fire."

It does not certainly appear that Teschan knew that this soldering iron had been used "only a few minutes before the rewind operation was started." He had seen Cronkhite use the iron earlier in the afternoon while the repairs were being made but he had left the room several times and gone back to his store, and it does not appear that he knew anything about Cronkhite having again heated the iron after the machine was assembled. When he had seen Cronkhite using the iron, earlier in the afternoon, the iron had been

used and laid down on the opposite side of the room from the work bench. Cronkhite, who was supposed to be the expert repairman, directed Teschan to rewind this film and Teschan would hardly expect him to give such an order when he had created a condition making it dangerous to do this. It would not be too surprising if Teschan was not on his guard against such a contingency. Not only does it not appear that Teschan knew that the iron had recently been used and was still hot, but there is positive evidence that he did not see it until after the fire started. Whether or not he should have seen it might well depend upon many circumstances. In any event, these various matters presented questions of fact and it can neither be held as a matter of law that Teschan was guilty of negligence nor that the evidence, with the reasonable inferences therefrom, was entirely insufficient to support the court's finding against such negligence.

Under this view it becomes unnecessary to decide the question raised as to whether any negligence on the part of Teschan was imputable to the respondent, and it is further unnecessary to consider the objections raised to certain other findings which become immaterial under that view of the case.

It is further argued that the respondent was also guilty of contributory negligence in failing to provide and maintain operative fire extinguishers which might have been used on this occasion. Cronkhite testified that there was one small fire extinguisher in the projection booth and that it was empty. There is other evidence that there were two small fire extinguishers in the booth. There is evidence that when the fire started Teschan yelled to Cronkhite to grab the fire extinguisher and that he ran downstairs to the lobby and brought back a large extinguisher. Cronkhite testified, however, that the nozzle of this large extinguisher was corroded and that he had to open the orifice with a wire before he could use it. It does not appear that either Teschan or the respondent knew the fire extinguishers were in bad condition, if such was the fact. The condition of the extinguishers had nothing to do with the starting of the fire and if it can be said that this matter was material at all the question was one of fact for the trial court.

It is next contended that the amounts of damages allowed for the building and its contents were so excessive

as to show an abuse of discretion. The court allowed $10,000 for the loss of the building. The respondent testified that the value of the building was $14,000; that he bought the building and land in 1936 for $4,750; that he bought the building from a bank holding company that had foreclosed a mortgage of $18,000 upon it; and that after he bought the building he spent more than $3,000 on alterations and repairs. While there is evidence that he had carried only $5,500 of fire insurance on the building and that it was assessed for a smaller amount these matters are not controlling. The cost of the building to the respondent is not controlling and conditions and values may have changed between 1936 and 1941. The entire matter was a question of fact for the court, and it can neither be said that there is no evidence to sustain the finding as to the value of the building nor that the court abused its discretion in fixing that value. With respect to the contents of the building for which the court allowed $10,000, the respondent testified that these contents were of a value in excess of $10,000 and then went over the various items giving them a total value of a little over $11,000. There was no conflicting evidence and the findings on these matters are sufficiently sustained.

Appellants' final contention is that the allowance of $4,000 for loss of profits on the theatre building during the year 1941 is not sustained by the evidence. The plaintiff testified that his annual profits during the preceding three years had been $4,000. On cross-examination the appellants brought out the fact that the respondent had reopened a similar business in a different location, with a much smaller seating capacity, eleven days after the fire. It also appears that the business in this new location had to be closed down on September 15th of that year because there was no heat in that building, whereas the business had been conducted all year round at the old location. It is argued that nearly half of the year had gone by before the fire occurred, that the respondent must have made some profits in operating the new business from about July 4th to September 15th, and that these profits should have been deducted from the $4,000 allowed for loss of business for that year. The burden was upon the appellants, in their attempt to minimize this damage, to show that the loss had been diminished by the operation of the new business. While the appellants brought out the fact that a new business had

been established no attempt was made to show that any profit was derived therefrom during the period of its operation and there is no evidence of such profit. Also, there is no evidence that any profit was made by the respondent during that year and preceding the fire. While it seems probable that some such profit was made which ought to have been offset against the loss of profits for this year the appellants failed to bring out the necessary facts, and in the condition of the record we are unable to hold that this item of damage is not supported by the evidence.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 13, 1944. Traynor, J., did not participate therein.