[Civ. No. 6615. Fourth Dist. Mar. 1, 1961.]

FRED A. CHAPIN LUMBER COMPANY (a Corporation), Appellant, v. LUMBER BARGAINS, INC. (a Corporation) et al., Defendants; GIBSON LUMBER COMPANY (a Corporation), Respondent.

614

Fullerton & Morris for Appellant.

Surr & Hellyer for Respondent.

COUGHLIN, J.—This is an appeal from a judgment on the pleadings in favor of a lessee in an action by a lessor to recover damages for the destruction of its buildings as the result of a fire caused by the lessee's negligence. Due execution of the subject lease was alleged in the answer of the defendant Gibson Lumber Company, a corporation; a copy thereof was attached; no denial was filed; therefore, the allegation of due execution was admitted. (Code Civ. Proc., § 448.) Apparently the defendant Lumber Bargains, Inc., is a dissolved corporation.

The issue on this appeal concerns the effect of the following provision of the lease upon the liability of the lessee:

"LESSOR agrees to maintain in full force and effect and to pay all premiums for fire, earthquake and storm insurance to cover the value of the buildings."

The trial court concluded that by the foregoing provision, the lessor agreed to maintain fire insurance on its buildings for the benefit of both parties to the lease and as between them, with respect to any loss covered thereby, agreed to seek reimbursement for such loss solely from the proceeds of such insurance. The plaintiff, lessor and appellant herein, contends that this conclusion constitutes a "holding that lessee was exonerated under the lease from liability for its negligent destruction by fire of lessor's improvements"; that the lessee's negligence arose out of the violation of a local fire prevention ordinance; that an agreement exonerating a lessee from such negligence is contrary to the provisions of section 1668 of the Civil Code; and, therefore, the conclusion of the trial court was erroneous. In reply, the defendant, lessee and respondent herein, contends that the decision of the trial court did not constitute a "holding" that it was exonerated from liability for its negligent conduct but, instead, was based on the conclusion that the provision in question "represents in effect an agreement that in case of fire, the plaintiff will look solely

to the proceeds of a fire insurance policy which it is obligated to procure"; is an agreement among the parties "to provide mutual protection by purchase of insurance against insurable losses"; and required the "lessor to insure an insurable interest for the benefit of both parties to the lease and to seek his recovery from the proceeds of such insurance."

Section 1668 of the Civil Code provides: "All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of law."

■ The public policy codified in section 1668, however, does not purport to prohibit the parties to a contract from agreeing that one of them shall maintain fire insurance and apply the proceeds therefrom toward the reimbursement of any fire loss covered by such insurance, although caused by the other's negligence. (Cf. Ins. Code, §§ 281, 284, 533; O'Neill v. Union Assur. Soc., Ltd., 166 Cal. 318, 320 [135 P. 1124]; Pellas v. Ocean Acc. & Guar. Corp., 24 Cal.App.2d 528, 535 [75 P.2d 635].) The vital question, therefore, is whether the provision in question, which requires the lessor to maintain fire insurance to cover the value of the buildings, is a provision made for the benefit of the lessee as well as the lessor. The trial judge aptly expressed the answer to this question in his written memorandum opinion wherein he said:

"It seems obvious from reading the whole lease that the parties, in this particular portion thereof, were seeking to protect themselves from certain losses and liabilities. There can be no reason for this paragraph unless it was intended that the buildings would be so insured that any fire loss would be paid out of the insurance."

The lease provides that the lessee, at its own expense, shall make all repairs to the buildings and keep them in good order and repair, excepting ordinary wear and tear and "destruction or damage by acts of God or such other acts beyond the control of the Lessee"; also that, upon the termination of the lease, the lessee shall deliver up the premises in as good condition as when received, "reasonable wear and tear and damage by acts of the elements, or acts of God or other similar causes excepted." Destruction or damage caused by the lessee's negligence was not included in the foregoing exceptions. (Morris v. Warner, 207 Cal. 498, 501-504 [279 P. 152].) As a consequence, these covenants imposed an obligation upon

the lessee which would subject it to a loss in the event a fire caused by its negligence resulted in destruction or damage to the leased premises. The lessee lawfully could protect itself against this loss through insurance even though such loss might result from its negligence. (Ins. Code, §§ 281, 284, 533; *O'Neill* v. *Union Assur. Soc., Ltd., supra,* 166 Cal. 318, 320 [135 P. 1124]; *Pellas* v. *Ocean Acc. & Guar. Corp., supra,* 24 Cal.App.2d 528, 535 [75 P.2d 635].) █ A policy of insurance " 'is a special agreement of indemnity with the person insuring against such loss or damage as he may sustain.' " (*Alexander* v. *Security-First Nat. Bank,* 7 Cal.2d 718, 723 [62 P.2d 735].) Although a lessor and a lessee may have separate insurable interests (*Alexander* v. *Security-First Nat. Bank, supra,* 7 Cal.2d 718, 723), the extent of these interests, depending upon the loss to be indemnified, may differ very little. Such is the case at bar. █ Where the parties to a lease agree that one of them shall maintain insurance for their mutual protection, "and the party obligated, in violation of his agreement, procures insurance payable to himself alone, the other party for whose benefit the agreement was made has an equitable lien on the proceeds of such insurance." (*Alexander* v. *Security-First Nat. Bank, supra,* 7 Cal.2d 718, 724.) If the lessor in the instant case maintained the fire insurance on its buildings in its name alone, assuming the lease contemplated that such insurance should be maintained for the benefit of the lessee as well as the lessor, the latter holds the proceeds of any such policy subject to the aforesaid equitable lien of the lessee. The amount of this lien would offset the amount of the damage which the lessor sustained as a result of the destruction of its buildings, because the loss against which the lessee was indemnified was that sustainable as a result of its liability for the damage which the lessor sustained. On the other hand, if the lessor breached its obligation and did not maintain fire insurance as agreed, its liability for breach of the lease would offset the lessee's liability for negligent use of the premises; except as hereinafter noted, the amount of damages recoverable upon these respective liabilities would be the same. In either event the decision of the trial court was proper.

█ A demonstration of the distinction between the contention of the lessor, i.e., that the insurance provision in question exculpates the lessee from liability for negligence, and the contention of the lessee, i.e., that this provision does not free

it from liability but, instead, imposes upon the lessor the obligation to insure it against loss from such liability, is found in a comparison between the extent of the loss against which the lessee was indemnified by the insurance which the lessor was required to maintain, and the extent of the loss which the lessee might sustain as a result of its liability for negligence. The insurance which the lessor agreed to maintain was "to cover the value of the buildings." It was not to cover all loss resulting from a fire which damaged or destroyed the buildings. The lessee's liability for damage resulting from a negligently caused fire might extend not only to the value of the buildings destroyed, but also to the value of any personal property destroyed, and would include all consequential damages proximately resulting from the fire, such as that which might arise from loss of use. (*Higgins* v. *Los Angeles Gas & Electric Co.*, 159 Cal. 651, 662 [115 P. 313, 34 L.R.A. N.S. 717]; *Stillwell* v. *R.C.A. Mfg. Co.*, 62 Cal.App.2d 347 [144 P.2d 638].) In the case at bar the complaint alleges and seeks recovery only of general damages. These do not exceed the value of the buildings destroyed. (*Green* v. *General Petroleum Corp.*, 205 Cal. 328, 336 [270 P. 952, 60 A.L.R. 475]; *Salstrom* v. *Orleans Bar Gold Min. Co.*, 153 Cal. 551, 558 [96 P. 292]; *Guttinger* v. *Calaveras Cement Co.*, 105 Cal.App.2d 382, 387 [233 P.2d 914].) It is a coincidence, therefore, that the loss claimed by the lessor is completely offset by the indemnity provided through the fire policy.

The foregoing conclusions, of course, are predicated upon the premise that the subject insurance provision contemplated the maintenance of insurance for the mutual benefit of both the lessee and the lessor. The phraseology of this provision is of note. It does not refer to the interest of either party but, instead, imposes an obligation to maintain fire insurance "to cover the value of the buildings." The paragraph of the lease immediately preceding this provision imposes upon the lessee the obligation to keep "the buildings" in "good order and repair . . . destruction or damage by acts of God or such other acts beyond the control of the Lessee, excepted." No specific reference is made to destruction or damage by fire, although the paragraph immediately following contains the provision in question, wherein loss from fire is the subject of consideration through an agreement to maintain insurance which will indemnify against such loss. The provisions of both paragraphs refer to the same buildings

and it is reasonable to conclude that the fire insurance mentioned in the later paragraph was concerned with indemnifying both the lessee and the lessor from any loss resulting from fire.

The plaintiff, lessor, directs attention to the lease provisions which declare that a total destruction of the premises by fire terminates the lease and abates the rent, providing, however, that should the lessor rebuild within six months, the lessee has a right of reoccupancy; that in the event of damage, but not total destruction by fire the lessor has the option to repair and direct that the rent shall be abated during the period of repairs; and that in the event of either total or partial destruction the lessor "will only contribute toward such repair or rebuilding whatever recovery Lessor shall receive from any fire or other insurance covering said destruction or loss." It is argued that had it been intended to give the lessee an interest in the insurance proceeds the lessee would have had some voice in determining whether to repair or rebuild after a fire loss; that the matter of repairing or rebuilding after damage or destruction by fire was wholly within the option of the lessor; and, therefore, it was not the intention of the parties to provide fire insurance protecting each of them against loss. The argument is not sound. The insurance coverage sought by a lessee is that which will protect him against loss. As heretofore noted, the lessee was subject to loss other than that arising out of a termination of the lease. Consequently the fact that it had no control over such termination in the event of damage or destruction by fire, does not compel the conclusion that the parties did not intend that it should be protected from loss in other areas.

Attention also is directed to a provision of the lease requiring the lessee to maintain public liability and property damage insurance with a loss payable clause protecting the lessor from liability. The lessor argues that had the parties intended to provide that the fire insurance it was obligated to maintain was for the benefit of the lessee, a similar loss-payable clause would have been required. The public liability insurance provision in question also provides that in the event the lessee fails to maintain such insurance the lessor may do so and the lessee shall pay the premiums therefor. No such covenant is contained in the fire insurance provision of the lease. The differences between these two provisions recognize the fact that the primary fire loss against which the lessee should

be indemnified would arise out of a liability in favor of the lessor, whereas any public liability loss against which the lessor should be protected would arise out of a liability in favor of a third party. Even though the lessor failed to carry fire insurance, the lessee would be protected against loss by the fire insurance provision itself which, in substance, provides an offset in its favor within policy limits against any claim by the lessor, whereas any failure of the lessee to carry public liability insurance might result in a loss to the lessor which could not be offset against the lessee's breach.

As the lessor was not required to rebuild in the event of total destruction by fire nor to repair in the event of damage by fire, the lessee had no reason to require the lessor to maintain insurance solely for the benefit of the lessor. Unless the insurance provision required that the insurance should be maintained for the benefit of the lessee as well as of the lessor, it serves no reasonable purpose. On the other hand, if this provision requires the maintenance of such insurance for the benefit of the lessee as well as the lessor the purpose for its existence is obvious. An interpretation which will give effect and purpose to a provision is more reasonable than one which leaves it devoid of effect or purpose. In *Fry* v. *Jordan Auto Co.,* 224 Miss. 445 [80 So.2d 53, 57], a fire resulted from the lessee's negligence; the lease required the lessor to rebuild and also to maintain insurance; and with respect to the effect of the latter provision in a suit against the lessee, the court said:

"She [the lessor] had a right to effect and maintain insurance on the property for her own benefit and protection, and it was not necessary that a stipulation be incorporated in the lease contract obligating her to keep the property insured for her own benefit. The only reasonable construction . . . is that the obligation which the lessor assumed . . . was an obligation to keep the building insured against loss or damage by fire . . . for the benefit and protection of both parties to the lease contract."

In *Cerny-Pickas & Co.* v. *C. R. Jahn Co.,* 7 Ill.2d 393 [131 N.E.2d 100, 103], which considered the liability of a tenant for loss by fire resulting from his negligence, reliance was placed upon a lease provision similar to the one at bar, and the court said:

". . . In the present lease the lessor agrees in clause 14 to pay for fire insurance upon the leased building, equipment

and machinery. The parties contemplated that the risk of loss by fire should be insured against and we see no reason to suppose that they did not contemplate the customary insurance policy which covers both accidental and negligent fires. . . . From the lease as a whole we conclude that the lessee was not to be liable for loss by fire regardless of the cause of the fire, and that the parties intended that the lessor should look solely to insurance as compensation for damage caused by any kind of fire.''

In *Lommori* v. *Milner Hotels,* 63 N.M. 342 [319 P.2d 949, 955-956], the court, in considering a lease provision requiring a lessee to carry public liability, elevator and workmen's compensation insurance, said:

''At least two inferences can be drawn from the covenant for insurance. Either the lessee was to carry liability insurance for his own protection, a somewhat useless provision as to lessors, or he was to carry it for the protection of both the lessors and itself. Under the rules of construction set out above, it is clear that the clause requires the lessee to carry liability insurance on the premises leased by him for the benefit of both the lessors and lessee. Accordingly, lessors and lessee should be protected under the requirements of the covenant and under any policy provided by lessee. If lessee failed to meet the requirements of this covenant for insurance, then he would be liable to lessors for such failure.''

The appellant, lessor, cites *Winkler* v. *Appalachian Amusement Co.,* 238 N.C. 589 [79 S.E.2d 185] ; *Sears, Roebuck & Co.* v. *Poling,* 248 Iowa 582 [81 N.W.2d 462] and *Wichita City Lines* v. *Puckett,* 156 Tex. 456 [295 S.W.2d 894], in support of its position. In each of these cases the lessee was held liable for a negligently set fire; two of them involved an insurance provision similar to the one at bar; in the third the insurance provision and applicable facts clearly distinguish it from the case at bar; of the two cases, one of them, i.e., *Winkler* v. *Appalachian Amusement Co., supra,* 238 N.C. 589 [79 S.E.2d 185], gives scant consideration to the effect of the insurance provision holding simply that such a provision did not exculpate the lessee from liability for its negligence and citing the Illinois Appellate Court decision in *Cerny-Pickas & Co.* v. *C. R. Jahn Co.* which later was overruled by the Supreme Court of that state. (*Cerny-Pickas & Co.* v. *C. R. Jahn, supra,* 7 Ill.2d 393 [131 N.E.2d 100]) ; and in the other case, i.e., *Sears, Roebuck & Co.* v. *Poling, supra,* 248 Iowa 582 [81 N.W.

2d 462, 467], it was stated that the question whether the lessee had a cause of action against the lessor for violation of the insurance covenant was not before the court. The authorities cited by appellant do not afford any basis for reaching a conclusion in the case at bar contrary to that heretofore indicated.

We conclude that the insurance provision in question required the maintenance of fire insurance for the mutual protection of both the lessor and the lessee; that, under the circumstances of this case, this provision affords a defense to the claim for damages alleged in the complaint; and that the action of the trial court entering a judgment on the pleadings was proper.

The judgment is affirmed.

Griffin, P. J., and Shepard, J., concurred.