[No. A025969. First Dist., Div. Three. June 8, 1984.]

PARSONS MANUFACTURING CORPORATION, INC., Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
GENERAL ACCIDENT FIRE AND LIFE ASSURANCE
CORPORATION, LTD., Real Party in Interest.

**1154**

COUNSEL

F. John Royce for Petitioner.

No appearance for Respondent.

Clark L. V. Deichler, David Morse Hammond and Jeffrey Lewis Gold for Real Party in Interest.

## OPINION

**BARRY-DEAL, J.**—This petition by a lessee challenges two summary judgment rulings against it. The issue raised is whether the lessor's insurer is barred from suing lessee for a negligently caused fire. The lease agreement provides for return of the premises in the same condition as received, ". . . damage by fire, act of God or by the elements excepted, . . ." and contains other provisions suggesting that the lessor will provide fire insurance for the building. We conclude that under the showing made below, those lease provisions bar recovery by the insurer.

On May 21, 1982, real party in interest, General Accident Fire & Life Assurance Corporation, Ltd. (insurer), having paid some $225,888.99 on a fire insurance policy, brought an action against petitioner. The complaint alleged that the lessors of commercial property had procured a fire insurance policy from real party and that petitioner was a lessee using the premises to conduct a plastics manufacturing business. The complaint alleged that petitioner's negligence caused a fire which consumed a large portion of the premises and caused the losses described in the complaint. It further asserted that real party was subrogated to the rights of the insured lessor and was entitled to the benefits of the written lease agreement dated November 10, 1970, and renewed on November 1, 1980.

Petitioner entered a general denial to the complaint and asserted the affirmative defense that in the lease the lessors had waived subrogation for damage by fire, citing *General Mills* v. *Goldman* (8th Cir. 1950) 184 F.2d 359.

Real party moved for partial summary judgment, seeking a determination that the lessors had not waived subrogation. Petitioner countered with its own motion for summary judgment, seeking to establish as a complete defense the asserted waiver of subrogation. On December 30, 1983, the trial court ruled in real party's favor on both motions, stating as follows: "The only reasonable interpretation of the lease and more specifically paragraph 5 thereof, is that the lessee would be responsible for their own negligence or intentional act in connection with any fire damage to the premises. This is consistent not only with logic but also with case authority on the subject. [¶] Thus, Plaintiff has a right of subrogation." This peti-

tion followed, seeking to set aside the ruling granting partial summary judgment for real party and denying summary judgment to petitioner.[1]

Summary judgment and partial summary judgment are authorized by Code of Civil Procedure section 437c, which provides, in part, that a motion for summary judgment ". . . shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . . [¶] . . . [I]f it appears that the proof supports the granting of such motion as to some but not all the issues involved in the action, . . . the court shall, by order, specify that such issues are without substantial controversy. . . . At the trial of the action the issue so specified shall be deemed established and the action shall proceed as to the issues remaining." (Code Civ. Proc., § 437c, subds. (c) and (f).)

■ "Review of the trial court's determination involves pure matters of law: Reassessment of the legal significance of the documents upon which the trial court acted. The reassessment normally proceeds in one or more of three consecutive steps:

"(1) ■ *Analyze the pleadings.* 'Papers submitted on a motion for summary judgment must be directed to the issues raised by the pleadings.' (*Vanderbilt Growth Fund, Inc.* v. *Superior Court* (1980) 105 Cal.App.3d 628, 635 . . . , citing *Keniston* v. *American Nat. Ins. Co.* (1973) 31 Cal.App.3d 803, 812 . . . .) In addition, a *defendant's* motion for summary judgment 'necessarily includes a test of the sufficiency of the complaint . . . . Motions for summary judgment in such situations have otherwise been allowed as being in legal effect motions for judgment on the pleadings.' (*C. L. Smith Co.* v. *Roger Ducharme, Inc.* (1977) 65 Cal.App.3d 735, 745 . . . ; cf. also *Brown* v. *Critchfield* (1980) 100 Cal.App.3d 858, 862, fn. 1 . . . ; *Bowden* v. *Robinson* (1977) 67 Cal.App.3d 705, 710 . . . ; *Kessler* v. *General Cable Corp.* (1979) 92 Cal.App.3d 531, 535-536 . . . .)

---

[1]The 1983 amendment to Code of Civil Procedure section 437c, subdivision (*1*), specified that when the trial court enters any order other than one granting "summary judgment," a party may petition an appropriate reviewing court for a peremptory writ. (Stats. 1983, ch. 490, § 1.) The new statute merely codifies decisional law permitting an aggrieved party to petition for a writ to reverse the denial of summary judgment (*Whitney's at the Beach* v. *Superior Court* (1970) 3 Cal.App.3d 258, 265-266 [83 Cal.Rptr. 237]) or the granting of partial summary judgment (*Nazaroff* v. *Superior Court* (1978) 80 Cal.App.3d 553, 557-558 [145 Cal.Rptr. 657]). It has not changed the standards employed by the appellate courts in deciding whether to entertain the writ on its merits. Applying those standards, we have concluded that this case is appropriate for review by writ.

"(2) ■ *Examine the moving parties' showing.* '"Summary judgment is proper *only* if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor . . . ."'' (*Weaver* v. *Superior Court* (1979) 95 Cal.App.3d 166, 183 . . . , quoting from *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 . . . , with italics added.) Where, as here, the moving party is a defendant he must either negate a necessary element of the plaintiff's case or state a complete defense. (*Frazier, Dame, Doherty, Parrish & Hanawalt* v. *Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 338 . . . .) If the moving party did not make the necessary showing, then (without consideration of triable issues of material fact) the summary judgment should have been denied. (Cf., e.g. *Albertini* v. *Schaefer* (1979) 97 Cal.App.3d 822, 831 . . . ; *Tresemer* v. *Barke* (1978) 86 Cal.App.3d 656, 662-663 . . . ; *Beech Aircraft Corp.* v. *Superior Court* (1976) 61 Cal.App.3d 501, 520 . . . .) ■ If (but only if) the moving parties are found to have made the necessary showing, then,

"(3) *Examine the responding parties' showing in opposition* to determine whether it created any triable issue as to a fact *material to the moving parties' showing*: '[N]o amount of factual conflicts upon other aspects of the case will affect the result . . . .' (*Frazier, supra,* 70 Cal.App.3d 331, 338.) If there was a triable issue of material fact summary judgment should have been denied.

■ "It is the general rule with respect to steps (2) and (3), that the moving parties' declarations should be construed strictly and the responding parties' liberally. (Cf., e.g., *Pupko* v. *Bank of America* (1981) 114 Cal.App.3d 495, 498 . . . ; *Calva Products* v. *Security Pacific Nat. Bank* (1980) 111 Cal.App.3d 409, 415 . . . .)" (*LaRosa* v. *Superior Court* (1981) 122 Cal.App.3d 741, 744-745 [176 Cal.Rptr. 224].)

### 1. *The Pleadings*

The complaint alleges a right to subrogation. The answer raises the affirmative defense of waiver of subrogation. Thus, the issue decided on the motion and cross-motion was joined by the pleadings. Neither party argues otherwise.

### 2. *The Moving Parties' Showing*

In order to analyze the showing made by each party in moving for summary judgment or partial summary judgment, it is necessary first to consider

the applicable law. Only then can we determine whether triable issues have been presented as to material facts.

### a. *The Applicable Law*

██ "A subrogation as applied to an insurer is its right to be put in the position of its insured against third parties legally responsible to its insured for the loss which the insurer has both insured and paid. [Citation.]" (*Liberty Mut. Fire Ins. Co.* v. *Auto Spring Supply Co.* (1976) 59 Cal.App.3d 860, 864 [131 Cal.Rptr. 211].) ██ "The right to subrogation is governed by equitable principles (see *Meyers* v. *Bank of America etc. Assn.* [1938], 11 Cal.2d 92, 96-97 . . .) . . . ." (*Liberty Mut. Fire Ins. Co.* v. *Auto Spring Supply Co., supra,* at p. 865.)

California law is surprisingly sparse in its treatment of the insurer's right of subrogation against a lessee who has negligently caused a fire. The early Supreme Court opinion in *Morris* v. *Warner* (1929) 207 Cal. 498 [279 P. 152], relied on by real party, supports the view that a negligent lessee should be held responsible for the damage he or she causes. There, a commercial lease required the lessor to rebuild after fire damage if restoration could be accomplished within 60 days. When the lessor refused to rebuild, lessee sued. Lessor cross-complained for damages caused by the negligent fire. The *Morris* court affirmed the trial court's judgment for the lessor on the cross-complaint. In the course of its ruling, it stated: "Neither the rebuilding clause nor the provisions of the lease to the effect that the lessee should keep said premises in good repair and condition at his own expense, *damage by fire or elements excepted,* and at the end of the term quit and surrender said premises to the lessor in good repair, *damage by fire* and ordinary use excepted, can reasonably be construed as relieving the lessee from liability to the lessor for a fire caused by his own negligence or as requiring the lessor to rebuild in the event that the premises should be destroyed by a fire thus caused by the negligence of the lessee." (*Id.,* at pp. 501-502.)

Pointing to paragraph 5 of petitioner's lease, the paragraph mentioned by the trial court, real party contends that the *Morris* discussion controls this case. Paragraph 5 of the lease provides, in pertinent part: ". . . By entry hereunder, Lessee accepts the premises as being in good and sanitary order, condition and repair and agrees on the last day of said term, or sooner termination of this lease, to surrender unto Lessor all and singular said premises with said appurtenances in the same condition as when received, reasonable use and wear thereof and damage by fire, act of God or by the elements excepted, and to remove all of Lessee's signs from said premises."

The *Morris* holding, because it was rendered in a suit between lessee and lessor not involving insurance, served merely to introduce a topic considered in greater detail by other California courts and courts of other jurisdictions. *Fred A. Chapin Lumber Co.* v. *Lumber Bargains, Inc.* (1961) 189 Cal.App.2d 613 [11 Cal.Rptr. 634] presented a situation one step closer to the facts of this case. There, the lease provided that the lessor would maintain fire insurance to cover the value of the buildings. In a damage action brought by the lessor alleging lessee negligence, the trial court ruled for the lessee. Lessor appealed, claiming the court had exonerated lessee for its negligence, in violation of Civil Code section 1668 (contracts to exempt one from responsibility for his own neglect are against the policy of the law). The *Fred A. Chapin* court answered the argument: "The public policy codified in section 1668, however, does not purport to prohibit the parties to a contract from agreeing that one of them shall maintain fire insurance and apply the proceeds therefrom toward the reimbursement of any fire loss covered by such insurance, although caused by the other's negligence. (*Cf.* Ins. Code, §§ 281, 284, 533; *O'Neill* v. *Union Assur. Soc., Ltd.* [1913] 166 Cal. 318, 320 . . . ; *Pellas* v. *Ocean Acc. & Guar. Corp.* [1938] 24 Cal.App.2d 528, 535 . . . .) The vital question, therefore, is whether the provision in question, which requires the lessor to maintain fire insurance to cover the value of the buildings, is a provision made for the benefit of the lessee as well as the lessor. The trial judge aptly expressed the answer to this question in his written memorandum opinion wherein he said: [¶] 'It seems obvious from reading the whole lease that the parties, in this particular portion thereof, were seeking to protect themselves from certain losses and liabilities. There can be no reason for this paragraph unless it was intended that the buildings would be so insured that any fire loss would be paid out of the insurance.'

"The lease provides that the lessee, at its own expense, shall make all repairs to the buildings and keep them in good order and repair, excepting ordinary wear and tear and 'destruction or damage by acts of God or such other acts beyond the control of the Lessee'; also that, upon the termination of the lease, the lessee shall deliver up the premises in as good condition as when received, 'reasonable wear and tear and damage by acts of the elements, or acts of God or other similar causes excepted.' Destruction or damage caused by the lessee's negligence was not included in the foregoing exceptions. (*Morris* v. *Warner* [*supra*], 207 Cal. 498, 501-504 . . . .) As a consequence, these covenants imposed an obligation upon the lessee which would subject it to a loss in the event a fire caused by its negligence resulted in destruction or damage to the leased premises. The lessee lawfully could protect itself against this loss through insurance even though such loss might result from its negligence. (Ins. Code, §§ 281, 284, 533; *O'Neill* v. *Union*

*Assur. Soc., Ltd., supra,* 166 Cal. 318, 320 . . . ; *Pellas* v. *Ocean Acc. & Guar. Corp., supra,* 24 Cal.App.2d 528, 535 . . . .) A policy of insurance ' "is a special agreement of indemnity with the person insuring against such loss or damage as he may sustain." ' (*Alexander* v. *Security-First Nat. Bank* [1936] 7 Cal.2d 718, 723 . . . .) Although a lessor and a lessee may have separate insurable interests (*Alexander* v. *Security-First Nat. Bank, supra,* 7 Cal.2d 718, 723), the extent of these interests, depending upon the loss to be indemnified, may differ very little. Such is the case at bar. Where the parties to a lease agree that one of them shall maintain insurance for their mutual protection, 'and the party obligated, in violation of his agreement, procures insurance payable to himself alone, the other party for whose benefit the agreement was made has an equitable lien on the proceeds of such insurance.' (*Alexander* v. *Security-First Nat. Bank, supra,* 7 Cal.2d 718, 724.)" (*Fred A. Chapin Lumber Co.* v. *Lumber Bargains, Inc., supra,* 189 Cal.App.2d at pp. 616-617.)

■ The principle distilled from *Morris* v. *Warner, supra,* 207 Cal. 498, and *Fred A. Chapin Lumber Co.* v. *Lumber Bargains, Inc., supra,* 189 Cal.App.2d 613, is that a lessee may, by contract with the lessor, establish protection against suit for negligently caused fire damage. Not answered by the California cases is what contractual provisions are required to secure such protection. *Morris* v. *Warner* suggests that merely excepting "damage by fire" from the lessee's duty to return the premises in good condition may not protect the lessee. *Fred A. Chapin Lumber Co.* shows that an express requirement that the lessor maintain fire insurance for the premises may provide such protection. An answer for cases between those extremes has not been provided.

Petitioner cites *General Mills* v. *Goldman, supra,* 184 F.2d 359, considered by many courts to be the leading modern case covering subrogation actions against negligent lessees. The lease in *Goldman* required that the lessee return the premises in good condition, " 'loss by fire and ordinary wear excepted' " (*id.,* at p. 361, fn. 1), and barred the lessee from doing anything that might lead to an increase in insurance premiums, but did not specifically impose on the lessor the duty to obtain fire insurance. The trial court concluded, however, that the understanding of the parties was that the lessor would assume the responsibility of fire insurance and that the lessor did indeed insure the premises and recover under the policy. The *Goldman* court thus ruled for the lessee: "It is very clear in the light of all the provisions of the lease, the circumstances of its execution and the understanding about fire insurance coverage to which the lease was related that by the provision that on termination of the lease the tenant should return the property in good condition 'loss by fire . . . excepted' the parties meant

a loss by fire such as is always meant when men are talking about or figuring on the risk of it in business dealings—i.e., the 'loss by fire' which always is insured against in ordinary course and against which the landlords here intended to and did take out insurance in an amount greater than the owners' investment.

"When the lease here is so read and understood the agreement of the lease is simple, normal and reasonable and such as intelligent men would be expected to agree upon. The fire which occurred and the consequent loss were within the contemplation of the parties and was covered as they meant that it should be by the fire insurance." (*Id.*, at p. 366.)

*Goldman* has been followed by courts of other jurisdictions (see *Rizzuto* v. *Morris* (1979) 22 Wn.App. 951 [592 P.2d 688], and cases discussed therein; but see *Acquisto* v. *Joe R. Hahn Enterprises, Inc.* (1980) 95 N.M. 193 [619 P.2d 1237]; *Galante* v. *Hathaway Bakeries* (1958) 6 App.Div.2d 142 [176 N.Y.S.2d 87]; *Sears, Roebuck and Co., Inc.* v. *Poling* (1957) 248 Iowa 582 [81 N.W.2d 462]; *Winkler* v. *Amusement Co.* (1953) 238 N.C. 589 [79 S.E.2d 185]) and has been cited favorably in California (see, e.g., *Liberty Mut. Fire Ins. Co.* v. *Auto Spring Supply Co., supra,* 59 Cal.App.3d 860, 866; *Sacramento-Yolo Port Dist.* v. *Cargill of California, Inc.* (1970) 4 Cal.App.3d 1004, 1012 [84 Cal.Rptr. 822]). Many of the cases following *Goldman* have involved leases which expressly required that the lessor furnish insurance for the premises. (See, e.g., *Alaska Ins. Co.* v. *RCA Alaska Commun.* (Alaska 1981) 623 P.2d 1216; *New Hampshire Ins. Co.* v. *Fox Midwest Theatres, Inc.* (1969) 203 Kan. 720 [457 P.2d 133]; *General Acc. F. & L. Assur. Corp.* v. *Traders Fur. Co.* (1965) 1 Ariz.App. 203 [401 P.2d 157].) But at least two recent decisions have protected the negligent lessee even without express requirements that the lessors secure fire insurance.

In *Rock Springs Realty, Inc.* v. *Waid* (Mo. 1965) 392 S.W.2d 270 [15 A.R.R.3d 724], the lease provided for surrender in good condition, loss by fire, etc., excepted. It also required the lessee to comply with fire regulations, and it barred him from doing anything to increase premiums or cause cancellation of fire insurance. In *Monterey Corporation* v. *Hart, Ex'r* (1976) 216 Va. 843 [224 S.E.2d 142], the lease required only that the lessee return the premises in good condition, " 'reasonable wear and tear and damages by accidental fire excepted. . . .' " (At p. 844.) Both courts ruled for the lessees. These two cases and others were analyzed in *Rizzuto* v. *Morris, supra,* 22 Wn.App. 951 [592 P.2d 688].

We adopt the reasoning of *Rizzuto,* quoting some of its more persuasive observations: "First, it would be an undue hardship to require a tenant to

insure against his own negligence when he is paying, through his rent, for the fire insurance which covers the premises in favor of the lessor. [Citation.] Second, insurance companies expect to pay their insureds for negligently caused fire, and they adjust their rates accordingly. In this context, an insurer should not be allowed to treat a tenant, who is in privity with the insured landlord, as a negligent third party when it could not collect against its own insured had the insured negligently caused the fire. In effect, the tenant stands in the shoes of the insured landlord for the limited purpose of defeating a subrogation claim. [Citations.] Third, the ordinary and usual meaning of 'loss by fire' includes fires of negligent origin. A reasonable businessman or woman contracting as a lessee would understand that the term exempts him or her from liability for all fires covered by the usual fire insurance policy. [Citations.]'' (*Rizzuto* v. *Morris, supra,* 22 Wn.App. 951, 955-956 [592 P.2d 688, 690].)

We do not mean our opinion to state that a lessor may never shift to the lessee the burden of insuring against the lessee's negligence. We state only that, at least where the agreement adverts to the possibility of fire and there is no clear language or other admissible evidence showing an agreement to the contrary, a lease agreement should be read to place on the lessor the burden of insuring the premises (as distinguished from the lessee's personal property) against lessor *and lessee* negligence. Moreover, where the lease has been drawn by the lessor, its language will be construed strictly against the lessor and its insurer. (See *Howe* v. *American Baptist Homes of the West, Inc.* (1980) 112 Cal.App.3d 622, 628 [169 Cal.Rptr. 418].)

b. *The Showing Below in Support of the Motions*

The lease agreement was the primary evidence presented by each side in support of its motion for summary judgment or partial summary judgment. Paragraph 2 of the agreement admonished lessee not to take any action which would increase the premiums or cause cancellation of the insurance policy on the building. As mentioned above, paragraph 5 excepted "damage by fire" from the lessee's obligation to return the premises in good condition. Paragraph 12 required the lessor to rebuild after fire damage under certain conditions. Paragraph 32 prevented the lessee from creating an unusual fire hazard, and paragraph 36 required the lessee to secure public liability, but made no mention of fire insurance on the premises.

We address first whether each moving party made a sufficient showing in support of its motion. Then, if so, we look to the showing in opposition to the motion. Clearly, the lease agreement alone was a sufficient showing by lessee, because it was rife with hints that lessor would

procure insurance on the premises. Under the principles discussed above, the lessee was entitled to expect that such insurance would be for its benefit as well as for the lessor's. On the other hand, just as clearly, the lease agreement alone was insufficient to sustain partial summary judgment in favor of the insurer, as it gave no indication that the lessee would need to protect against its own negligence.

 The court's ruling granting partial summary judgment in the insurer's favor can be sustained only if other evidence, not contradicted by the lessee's showing, reveals an agreement between lessor and lessee that the lessor's insurance would not cover the lessee's negligence. Other than the lease provisions themselves, the only pertinent evidence presented by the insurer in support of its motion was the deposition testimony of the lessee's chief executive. He testified that, at his insurance company's request, he asked the lessor for a document waiving subrogation and was refused such a document. Real party contends that the evidence presented shows as a matter of law that no waiver of subrogation took place. We conclude that the showing falls short. It reveals, at most, that no express waiver took place. It does not in any way negate the lease language, which suggests that the parties entered the lease with the mutual understanding that the lessor would obtain fire insurance for the benefit of the lessee.

Because real party failed to present evidence sufficient for a ruling in its favor, the trial court erred in granting its motion for partial summary judgment. This conclusion may be reached without even examining petitioner's showing in opposition to the motion. (See *LaRosa* v. *Superior Court, supra,* 122 Cal.App.3d 741, 744.)

### 3. *The Showing in Opposition to the Motion*

 As mentioned above, the lease itself made a sufficient showing in support of petitioner's motion. In addition, however, petitioner presented a partial transcript of the deposition of one of the lessors. The transcript revealed that the lessor, not petitioner, had selected the lease form, that the lessor did not understand paragraph 36 (lessee shall secure public liability insurance policy) as applying to fire insurance for the building, and that the lessor could see no provision of the lease which specifically applied to the question of who should maintain fire insurance. The lessor further stated that, at the time the lease was entered, he did not consciously think about whether a portion of the lease payments would be used to pay for fire insurance premiums, but that the lessors had been buying fire insurance from the time they purchased the building, and he assumed they would continue to do so.

In opposition to petitioner's motion for summary judgment, real party filed points and authorities and a declaration incorporating the documents already before the court on real party's motion for partial summary judgment. Real party presented no evidence showing that the parties intended that the lessee be responsible for its own negligence or expected the lessee to insure the premises for fire damage. Real party relied below upon the absence of an express waiver of subrogation, not upon an intention of the parties contrary to the implications of the lease.

Real party failed to present evidence to rebut the inference from the language of the lease that lessor would procure insurance for the benefit of both lessor and lessee. Therefore, the trial court erred in denying petitioner's motion for summary judgment.

Let a peremptory writ of mandate issue, directing the San Mateo County Superior Court to vacate its rulings on the motions for summary judgment and for partial summary judgment and to enter a new order granting summary judgment in favor of petitioner.

White, P. J., and Scott, J., concurred.

The petition of real party in interest for a hearing by the Supreme Court was denied August 9, 1984.