WILLIAM GILMOUR & others *vs.* STANDARD SURETY AND CASUALTY COMPANY OF NEW YORK.

Suffolk.   December 12, 1933. — September 28, 1935.

Present: RUGG, C.J., FIELD, DONAHUE, & LUMMUS, JJ.

*Bond*, Fidelity. *Contract*, Construction, Performance and breach. *Notice.*

In an action upon a surety bond to indemnify a general insurance agent against loss through the fraud or dishonesty of a subagent accountable to the general agent for premiums collected, the surety's liability being on condition that the obligee give notice to the surety within ten days after his "discovery" of such loss, a finding was warranted that notice was seasonable if given within ten days after the obligee became convinced that the subagent was guilty of dishonesty, though before that time he knew him to be neglectful and dilatory in performing his obligations and had grounds to suspect dishonesty.

CONTRACT.   Writ dated July 9, 1931.

The action was heard in the Superior Court by *Whiting*, J., without a jury.

*J. T. Connolly*, (*W. R. Donovan* with him,) for the defendant.

*R. J. Walsh*, for the plaintiffs.

DONAHUE, J.   The plaintiffs carried on a general insurance business in Boston and were general agents for companies issuing policies of motor vehicle insurance. The plaintiffs and Alfred N. LaBrecque, Inc., a corporation engaged in the business of insurance broker and agent, entered into an agreement whereunder the corporation, hereinafter to be referred to as the agency, undertook to sell motor vehicle insurance policies issued by the plaintiffs for the companies for which they were general agents. This action is brought upon an indemnity bond given to the plaintiffs by the agency as principal and the defendant

as surety. So far as here relevant the indemnity therein provided was for "any pecuniary loss sustained . . . of money . . . including that for which the Employer is responsible, occasioned by any act or acts of fraud, dishonesty or any criminal act by the Employe directly or through connivance, while occupying the position of *Agency* in the Employer's employ, during" a period of time which had not expired upon the happening of the events here involved. The obligation of the surety was, by the terms of the bond, subject to stated conditions and limitations including the following: "That loss be discovered during the continuance of this suretyship or within six (6) months after its termination, and notice delivered to the Surety at its Home Office within ten (10) days after such discovery."

The case was tried before a judge of the Superior Court sitting without jury. He found for the plaintiffs in the sum of $9,782.41 with interest. The defendant excepted to the denial of its motion that a finding be made in its favor and to the refusal of the judge to give certain requested rulings.

We are not here concerned with certain matters which were in issue at the trial. The parties now agree that under the terms of the contracts between the plaintiffs and the insurance companies for which they were general agents the plaintiffs were obligated to pay to those companies all premiums on policies issued by the plaintiffs which were collected by the agency less commissions, cancellations and returned premiums. It is also agreed that if the plaintiffs are entitled to recover in this action they are entitled to recover the sum found by the trial judge.

The sole issue here is whether the evidence warranted a finding that the plaintiffs complied with the requirement of the bond that notice should be delivered to the surety within ten days after the plaintiffs' "discovery" of "loss." The plaintiffs on May 18, 1931, sent a written notice of loss which was received at the home office of the defendant on the following day. The defendant does not question the sufficiency of the contents of the notice but contends that

it was not given seasonably, within the time limit after discovery of loss prescribed by the bond. More precisely stated, the question is whether there was evidence which permitted the finding by the judge that prior to May 10, that is, less than ten days before notice was given, "discovery" of "loss," within the meaning of those words of the bond, had not been made by the plaintiffs.

The contract of suretyship made by the defendant provided indemnity to the plaintiffs in the event that they sustained loss through dishonest conduct on the part of the agency. Loss in fact came to the plaintiffs because the agency wrongly appropriated to the payment of its own debts moneys received by it as premiums on the policies issued by the plaintiffs. None of the individual plaintiffs personally dealt with the agency. The employees of the plaintiffs who on their behalf had dealings with the agency denied having knowledge of the agency's wrongful conduct until after May 9. There was no direct evidence that the employees earlier had actual knowledge of fraudulent, dishonest or criminal acts. It is the contention of the defendant that it must be inferred from the terms of the contract with the agency and from circumstances, of which responsible employees were aware prior to May 10, that they knew or reasonably should have known that the agency had acted fraudulently, dishonestly or criminally with respect to premiums which it had collected and had not remitted to the plaintiffs.

The agreement between the plaintiffs and the agency, which was made in December, 1930, was oral and there was conflicting testimony as to its terms. Since the trial judge found for the plaintiffs, where such evidential conflicts appear we must take the version most favorable to the prevailing party. *Bankers Trust Co.* v. *Dockham*, 279 Mass. 199, 200. The trial judge had warrant on the evidence for finding the terms of the oral contract to be as follows: The plaintiffs agreed to issue during the year 1931 policies of motor vehicle insurance to customers obtained by the agency. The premiums were to be collected by the agency, which was accountable to the plaintiffs only for such pre-

miums as were actually collected. As to such collected premiums the agency by the terms of the agreement was required to remit to the plaintiffs the balance after deducting the agency's commission and premiums returned to customers upon a cancellation of policies. Such remittances were not required to be made by the agency immediately upon its collection of premiums. On some of the policies issued the customer was allowed to make payments on an instalment plan. There was to be no remittance to the plaintiffs on account of such premiums until the instalment payments were completed but it was agreed that the agency should make remittance when the payments of instalments were completed and in any event by April 1. The remittance of such premiums as were not payable in instalments was not required until the plaintiffs had sent to the agency a monthly statement showing the policies which had been issued during the preceding month and until the agency had a reasonable time to check the statement and to prepare and furnish the plaintiffs with a list of the policies the premiums on which had been collected by the agency. Within a short time thereafter the agency was to send to the plaintiffs that list with a check for the net amount of the premiums thereby shown to have been received by the agency. The plaintiffs' office manager testified that a "short time" would be a week or ten days. He also testified that there was no definite fixed time after the collection of premiums when the agency was required to pay the balance of premiums it had collected. The plaintiffs knew that the agency gave credit to some customers for premiums but had no knowledge as to the term of credit extended by the agency to its customers or as to the premiums it had collected until informed by lists sent by the agency.

The agency was a corporation, all but one share of the stock of which was held by one LaBrecque. After the making of the contract in December all of the dealings of the plaintiffs with the agency were with one O'Keefe who was clerk of the corporation and held one share of stock. His duties required him to be in the office part of the time

and outside soliciting and collecting part of the time. A statement of the policies issued by the plaintiffs during the month of January and the first few days in February was sent to the agency between the twentieth and the twenty-fifth of February and the first remittance was made by the agency on March 4. Thereafter for the next six weeks the plaintiffs' employees telephoned to the agency from time to time and asked for a remittance and the agency, after some delay, responded by sending a list of premiums received and a check. Seven such remittances were made in the period beginning March 4 and ending April 27.

The plaintiffs' employees did not ask the agency what premiums had been collected until the latter part of April. About April 20 they requested a list of premiums collected and a check therefor, and were told by O'Keefe that a list would be made up and forwarded in a few days. On April 25 such a list was completed. On April 28 the plaintiffs' employees again telephoned O'Keefe and were told that LaBrecque had the list with him and would deliver it to the plaintiffs. They were also told that LaBrecque was president of the city council of Quincy and at the time acting mayor. The plaintiffs endeavored without success to communicate with him at the city hall. On May 2 the plaintiffs notified O'Keefe over the telephone that unless a list of premiums collected, and a check, were sent a cancellation notice on all outstanding business would be sent at once. On May 6 the plaintiffs received through the mail a list of the premiums collected but no check and on the same day were informed by O'Keefe that LaBrecque was on his way to the plaintiffs' office. On May 7 this statement was repeated. On the following day, May 8, the plaintiffs consulted their attorney who promptly endeavored to get in touch with LaBrecque and to obtain the remittance of premiums which had been collected. Since we are concerned only with the period prior to May 10 it is unnecessary to consider in detail the efforts made by the attorney. He learned on May 16 that LaBrecque was endeavoring to borrow money to pay the plaintiffs and shortly thereafter sent notice of loss to the defendant.

We are not here immediately concerned with the question of the circumstances under which at common law an obligation is imposed on the obligee in a fidelity bond to give to the surety notice of a default by the principal. (*Watertown Fire Ins. Co.* v. *Simmons,* 131 Mass. 85.) As stated in the defendant's brief, the sole issue here presented is whether the trial judge was warranted in finding that the plaintiffs sufficiently complied with the provision of the bond requiring that notice of loss be given by the plaintiffs to the surety within ten days after the discovery of loss. The giving of such notice was made a condition precedent to recovery on the bond. *Friedman* v. *Orient Ins. Co.* 278 Mass. 596, 598–599.

The character of the loss for which the plaintiffs were to be indemnified was defined in the bond as "any pecuniary loss . . . occasioned by any act or acts of fraud, dishonesty or any criminal act" of the principal. The instrument was manifestly not intended to furnish a guaranty of the credit of the principal or indemnity for its merely negligent conduct not amounting to some form of dishonesty. Thus mere want of punctuality on the part of the agency in furnishing a list of policies the premiums on which it had received, in making remittances or in performing similar contract requirements, or delays acquiesced in by the plaintiffs unassociated with dishonesty of the agency or lack of good faith on the part of the plaintiffs would not require giving the notice stipulated in the bond. *Pacific Fire Ins. Co.* v. *Pacific Surety Co.* 93 Cal. 7. *Aetna Life Ins. Co.* v. *American Surety Co.* 34 Fed. Rep. 291. The indemnity provided was for the results of the agency's fraud, dishonesty or crime and not its negligence.

The bond did not require notice of described acts or conduct of the agency of such a character that if known to the surety might enable it to avert future loss by a repetition of those acts or a continuance of that conduct. Its purpose was not to "secure the safety of prevention through timely warning" as in *Guarantee Co. of North America* v. *Mechanics' Savings Bank & Trust Co.* 183 U. S. 402, 420. The

loss with which the requirement of notice in the present bond was concerned was loss accomplished.

The contingency which made a notice necessary was not the occurrence of a loss but rather the plaintiffs' discovery of a loss which had occurred. The provision as to notice is in the interests of the surety and the language cannot reasonably be construed to mean that the giving of notice could be deferred until such time as the plaintiffs had not only discovered but were actually able to prove that loss had occurred. That would be of no benefit to the surety. Another provision in the bond required a formal sworn claim of loss to be furnished at a later time. It is manifest that in the requirement of notice something less than discovery of demonstrable loss is meant.

But discovery of loss must mean knowledge of loss, that is, knowledge derived from known facts or reasonable inferences of fact. If facts known to an obligee in a bond containing such a provision and inferences which should reasonably be drawn therefrom would inform the ordinary man in his situation that there had been a loss, he has discovered the loss within the meaning of the language of the bond. If such facts and inferences do no more than create in his mind a mere suspicion of loss the necessity of notice does not arise. *American Surety Co.* v. *Pauly (No. 1)*, 170 U. S. 133, 145, 147. *American Surety Co.* v. *Pauly (No. 2)*, 170 U. S. 160, 164. *Bank of Tarboro* v. *Fidelity & Deposit Co.* 128 N. C. 366, 374. *National Surety Co.* v. *Western Pacific Railway*, 200 Fed. Rep. 675, 682. *United States Fidelity & Guaranty Co.* v. *Barber*, 70 Fed. Rep. (2d) 220, 224. See also *Fidelity & Casualty Co.* v. *Gate City National Bank*, 97 Ga. 634, 637; *Fidelity & Deposit Co. of Maryland* v. *Bates*, 76 Fed. Rep. (2d) 160, 167.

The question here to be decided is whether the evidence and reasonable inferences therefrom warranted the judge's finding that the plaintiffs did not, before May 10, have knowledge that a loss had been occasioned by the fraud, dishonesty or crime of the agency. Prior to April 20, at which time the plaintiffs demanded a list of the collected

premiums and a remittance, the agency had made remittances only after telephone calls by the plaintiffs. After that date there was further delay in the sending of the requested list and when such list was finally sent no remittance went with it. A finding was warranted that the agency was neglectful in performing its obligations under their oral agreement. But negligence does not necessarily spell fraud, dishonesty or crime. There was no testimony that the plaintiffs had information of any specific act of the agency of that character and it was knowledge of wrongful conduct of that sort which, under the bond, required notice to the defendant. Knowledge of a fact may, of course, be acquired by inferences from other known facts. In determining whether the conduct of the agency which was known to the plaintiffs should have been given by them the sinister significance which required notice to the defendant, the trial judge had the right to take into account the circumstances in which that conduct appeared. There was evidence of circumstances which, if believed, tended to show that the known conduct of the agency was not such as reasonably to charge the plaintiffs with knowledge of that kind of conduct which obligated the plaintiffs to give notice to the defendant. During the first few months in a year most of the policies under the compulsory motor vehicle insurance law are issued and during the period with which we are here concerned the office forces of the agency and of the plaintiffs were abnormally busy and overworked. Both transacted in that time a large amount of business. The plaintiffs knew that the agency extended credit to many of its customers but did not know or seek to know the terms of such credits. The agreement did not require a remittance on account of premiums until they were collected from the customers, a monthly statement of policies which had been issued was furnished by the plaintiffs and a list of policies on which premiums had been paid was prepared by the agency. There was no evidence of rumors that the agency was insolvent or that its officers or employees were dishonest. The experience which the plaintiffs had in their dealings with O'Keefe prior to the latter

part of April was not such as to make it unreasonable for them to give some credit to the representations he then made to them. The responsible head of the agency was at the time particularly busy in civic or political affairs and not easily accessible on matters concerning the business of the agency. The plaintiffs consulted counsel on May 8, but on the evidence of the participants that consultation was not the result of the acquisition of knowledge of dishonest conduct of the agency but came from the desire to press for an overdue remittance from a dilatory debtor. We think that the question whether before May 10 the plaintiffs had acquired knowledge of facts which with reasonable inferences therefrom denoted the misconduct of the agency as to which the bond provided indemnity and required notice, was on all the evidence a question of fact for the determination of the trial judge. What has been hitherto said makes it unnecessary to consider in detail the defendant's exceptions to the judge's rulings and refusals to rule as it requested. In those rulings we find no error.

*Exceptions overruled.*