[Civ. No. 14876. Third Dist. Dec. 19, 1975.]

FRED D. CULLINCINI, Plaintiff and Appellant, v.
VERNON K. DEMING et al., Defendants and Respondents.

---

---

## COUNSEL

Jerome S. Stanley for Plaintiff and Appellant.

Boornazian, King & Schulze, George King and James L. McIntosh for Defendants and Respondents.

---

## OPINION

**PARAS, J.**—Plaintiff Cullincini appeals from an order granting summary judgment for defendants.[1]

This case arises out of a dispute over funds in an escrow account, established pursuant to section 24074 of the Business and Professions

---

[1]The order refers only to defendant Deming. However, the parties have treated it as applying to defendants Ingraham, Galloway and Keller as well. The omission of Ingraham and Galloway appears inadvertent, inasmuch as the motion for summary judgment was made on their behalf as well as Deming's. The trial court is requested to correct this clerical error in the record. The pendency of this appeal does not affect the court's power to make such a correction. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 66, pp. 3228-3229.)

The summary judgment cannot be applied to defendant Keller, however, as he has not appeared in this action. He is not a party to this appeal.

Code, for transferring ownership of a liquor license. Section 24074 requires that upon sale of a licensed establishment, and as a condition of transfer of the license, the proceeds of the sale shall be placed in escrow and shall be available to satisfy claims against the transferor in accordance with specified procedures and preferences.

Plaintiff's unverified complaint alleges in the first cause of action (for negligence) that on or about June 1, 1972, defendants Deming, Ingraham and Galloway, attorneys at law, became the escrow agents for the transfer of the assets of L & K Lounge, Inc., including a liquor license. Defendant Roy Keller was alleged to be "president and major shareholder of L & K Lounge and was the husband of Virginia Keller, deceased."

The first cause further alleges that plaintiff submitted a claim to the escrow in the amount of $6,750, based upon his demand in a lawsuit which was then pending against Virginia Keller, L & K Lounge and others; and on September 15, 1972, the escrow agents "distributed the money held in escrow by them and paid to plaintiff the sum of $769.94 in partial satisfaction of his claim."

The final paragraph of the first cause of action then alleges:

"On or about September 15, 1972, defendants DEMING, GALLOWAY and INGRAHAM in their position as escrow holders were acting as trustees for the benefit of beneficiary creditors of L & K Lounge and said defendants breached their duty to said beneficiaries of due care in the management of said escrow and were negligent in the distribution of the sums entrusted to them for the benefit of said beneficiaries in that *they accepted and paid out of said escrow the inflated claim of defendant* ROY KELLER without sufficient justification or substantiation of said claim thus grossly depleting the sums available for distribution to the other creditors of L & K Lounge, all to plaintiff's damage in the sum of $6,300.00." (Italics added.)

Plaintiff's second cause of action for conversion incorporates all but the last paragraph of the first cause of action, and adds that "On or about September 1, 1972, defendants, and each of them, knowingly and wilfully conspired and agreed amongst themselves to convert the sum of money being held in escrow by defendants INGRAHAM, DEMING and GALLOWAY to the benefit of defendant KELLER through a scheme of presenting to the escrow holder of *an inflated demand by defendant*

KELLER and the acceptance thereof without any substantial basis or belief in its truthfulness by said escrow holder." (Italics added.)

The complaint seeks general damages in the sum of $6,300 and punitive damages of $25,000.

Defendants Deming, Galloway and Ingraham filed a general denial to the complaint and on April 30, 1974, filed a motion for summary judgment. In support of the motion, defendants submitted a declaration of defendant Ingraham stating that he was a member of the law firm of Ingraham, Deming and Galloway, and that he was the escrow holder and in that capacity he "caused to be created an Escrow agreement and instructions, . . . agreed to by both buyer and seller. A true and exact copy of said document is attached hereto, marked Exhibit 'E', and by this reference incorporated herein . . . ." Surprisingly, Exhibit "E" was signed for the seller as follows: "SELLER: L & K LOUNGE, INC. By Vernon K. Deming, Assistant Secretary." The latter is the Deming of the Ingraham, Deming and Galloway law firm.

Ingraham further declared that he "received numerous claims of creditors against this escrow including a claim by one Mr. Roy Keller received July 31, 1972 for the amount of $94,402 (see Exhibit 'F') . . . ." Exhibit F is a typed memorandum of a half-sheet of paper signed "Roy H. Keller," but stating it is "FROM: Vernon K. Deming."[2]

Ingraham's declaration then states that he received "a claim[3] on behalf of one Mr. Fred D. Cullincini, dated August 8, 1972, in the amount of

---

[2]Exhibit "F" *in toto* is as follows:
"DATE: July 31, 1972
TO: Taggert Ingraham
FROM: Vernon K. Deming
RE: L & K Lounge, Inc.
Please accept this letter as a demand for the unpaid obligation of L & K Lounge, Inc. to ROY KELLER in the amount of $94,402.00. Please enter this as a demand in both the escrow covering the sale of the liquor license and the escrow covering the sale of the personal property.
Very truly yours,
ROY H. KELLER [Signature]."

[3]The claim is in the form of a letter from plaintiff's counsel to Ingraham dated August 8, 1972, and reads as follows:
"Pursuant to our telephone conversation of this date, I wish to file a claim against the escrow which you are handling. This claim is in the amount of approximately $6,750.00 and represents monies owed to Fred D. Cullincini by Virginia Keller and the L & K Lounge, Inc. As you know, a complaint for this money has been filed against Mrs. Keller and L & K Lounge for labor done and goods delivered to them in August of 1970. *If this claim is denied, I request that you give me notice thereof, that I may take the appropriate action to protect the rights of Mr. Cullincini.*
Your cooperation and assistance in this matter is appreciated." (Italics added.)

$6,750. . . . Mr. Cullincini's claim was acknowledged in writing on August 10, 1972, by my associate and co-defendant Mr. Deming (acknowledgement attached as Exh. 'B')." Exhibit "B," a letter from Mr. Deming to plaintiff's attorney, also adds, "Your claim is denied in full."

Ingraham further declared that upon approval of the transfer of the liquor license, he mailed a statement to all creditors, including plaintiff's counsel, showing "a cash on deposit with the escrow holder, as a result of the sale, of $18,100, and claims against the escrow account of $111,986.77" as of September 7, 1972. The statement indicated that pro rata payments would be made to creditors on September 18, 1972. After payments of $6,296.67 to preferred creditors (including $950 to escrow holder Ingraham), plaintiff was paid $769.94 and Keller $10,812.49 as *pro rata* shares of the remainder, along with two other creditors.

Ingraham's declaration concluded:

"With particular reference to the Keller claim, it was received by me in my status as escrow holder in the ordinary course of business. I relied on information and belief that Mr. Keller's claim was indeed valid after speaking with Keller, his attorneys, and his accountants. I had no reason to contest the *veracity* of this claim. I never received information while the escrow account was open or prior to my final disbursements that any claim including Mr. Keller's was questionable. Similarly, I never received any information subsequent to my disbursement of the funds within the escrow account causing me to doubt the veracity of any claim, including Mr. Keller's. After this litigation arose, I did further investigation of my own. In so doing, I again found Mr. Keller's claim to be valid, in that I received a letter from the firm of Holdner, Baxtron & Co., certified public accountants in Portland, Oregon, who informed me of the validity of said claim . . . .

". . . . . . . . . . . . . . . . . .

". . . I did not make an independent investigation of all claims against the escrow accounts because I had received information in the ordinary course of business that the claims were valid. I never received any information casting any doubt on the validity of said claims."

Plaintiff responded to the motion on June 20, 1974, with a declaration by plaintiff's counsel stating, "I am informed and believe that defendants INGRAHAM, DEMING AND GALLOWAY are partners or associates in

a practice of law, that Mr. Deming or Mr. Ingraham have represented Mr. Keller on various occasions prior to sale of this escrow, that they were aware or should have been aware at the time of the escrow Mr. Keller was a 100% shareholder and president of L & K Lounge."[4]

On this showing, the trial court granted defendants' motion for summary judgment.

Plaintiff on appeal contends that summary judgment was improper because "at least three triable issues of fact are present:

"1. Whether defendants INGRAHAM, DEMING and GALLOWAY as escrow holder did fulfill their fiduciary duties to all creditors of L & K Lounge;

"2. Whether or not defendants complied with the statutory requirements set up by Business and Professions Code § 24074; and

"3. Whether or not defendants were acting in violation of Civil Code § 1057.5."

These claimed issues of fact are no more than a statement of plaintiff's legal contentions on appeal. Plaintiff's two briefs do little more than repeat the statements of the complaint and declaration sandwiched between general citations to the law of summary judgments.

Section 437c of the Code of Civil Procedure provides that a motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The section further provides, "Supporting and opposing affidavits or declarations shall be made by any person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

The opponent of a motion for summary judgment cannot rely on his pleadings, but must make an independent showing that he has

---

[4]Plaintiff's counsel's declaration also recited that Ingraham "should have known that plaintiff was a secured creditor . . ." and that plaintiff had withdrawn a keeper placed on the premises to collect the funds owed, in reliance upon defendant Deming's misrepresentation that the business would be sold and plaintiff would be paid. These statements are irrelevant to the issues raised by the pleadings.

"sufficient proof of the matters alleged to raise an issuable question of fact in regard thereto." (*Hayward Union etc. School Dist.* v. *Madrid* (1965) 234 Cal.App.2d 100, 120 [44 Cal.Rptr. 268].) This rule applies even where the pleadings are verified. (*Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 262 [223 P.2d 244].) Here they are unverified.

Plaintiff's counsel's declaration in opposition to the motion is inadequate. It neither asserts nor otherwise demonstrates that Keller's claim was false or excessive. It only shows at best that Keller was the sole shareholder of L & K Lounge, Inc., and this without even a showing that the declarant could testify to this fact of his own knowledge. (*Orlando* v. *Berkeley* (1963) 220 Cal.App.2d 224 [33 Cal.Rptr. 860].) Absent a showing of invalidity of the Keller claim, plaintiff cannot maintain that he was damaged by Ingraham's failure properly to investigate it. Thus plaintiff has failed to show a triable issue as to whether defendants fulfilled their fiduciary duties.

Furthermore, plaintiff was represented by counsel who expressly asked to be informed if his client's claim was denied. He was so informed unequivocally on August 8, 1972, about six weeks before the escrow holder disbursed the funds. On September 8, 1972, as acknowledged in his declaration, plaintiff's counsel received the escrow statement with the proposed proration date of September 18, 1972, showing the Keller claim in its entirety. Nothing was done by plaintiff or in his behalf. Even if a fiduciary duty were initially shown, such correspondence indicates that it was either discharged or disavowed in ample time to avoid damage to the beneficiary.

Plaintiff's second argument is that defendants failed to comply with section 24074 of the Business and Professions Code because they did not accord plaintiff the status of a secured creditor. Although plaintiff's counsel's declaration contains a recital that plaintiff was secured, the statement was properly disregardable because: (1) it was not affirmatively shown to be within the personal knowledge of the affiant, (2) it would be inadmissible hearsay since counsel was not a party to the agreement; and (3) it would be inadmissible under the best evidence rule.

Plaintiff's final argument is equally unavailing. Section 1057.5 of the Civil Code provides, "Except for the normal compensation of his own employees, no person acting as an escrow agent . . . shall pay over to any other person any commission, fee or other consideration as compensation for referring, soliciting, handling, or serving escrow customers or accounts."

Plaintiff's counsel's declaration contains nothing relating to any referral fee paid by Ingraham. Even if it could be considered on a motion for summary judgment, the allegation of conspiracy in the complaint is not susceptible to such an inference, as plaintiff seems to argue.

Based upon the record before us, we have no alternative but to affirm and we do so affirm the trial court's grant of summary judgment.[5]

Puglia, P. J., and Regan, J., concurred.

---

[5]We are not blind to the fact that certain circumstances contained in the record cried out in vain for plaintiff's proper attention. It is quite obvious that Deming was acting as attorney for L & K Lounge, Inc. (as well as an officer thereof) at the same time that his law associate, Ingraham, was acting as escrow holder. If Keller was indeed the sole stockholder of L & K Lounge, Inc., a suspicion would naturally arise of an effort to loot the corporation as it retreated into oblivion. *Alter ego* looms large.

All of this was known to plaintiff's counsel at the time the summary judgment motion was made and could have been properly presented to the trial court through appropriate opposition, involving if necessary, discovery, amendment of the complaint, and even a request for leave to amend in the event of granting the motion. Such action was not taken. The declaration supporting the motion negated all liability for the wrongful acts of which Deming, Galloway and Ingraham were accused in the complaint, and whatever suspicions might arise from the facts disclosed do not alter this. It was up to the plaintiff, in accordance with the theory of his complaint, to turn these suspicions into triable issues of fact by proper opposition consistent with well-established rules relating to summary judgment procedures. This was not done.