[Civ. No. 56758. Second Dist., Div. Four. Jan. 27, 1981.]

USLIFE SAVINGS AND LOAN ASSOCIATION,
Plaintiff, Cross-defendant and Appellant, v.
NATIONAL SURETY CORPORATION,
Defendant, Cross-complainant and Appellant;
JACK J. SPITZER, Cross-complainant and Respondent;
JANE SHALER, Cross-defendant and Respondent.

COUNSEL

Manatt, Phelps, Rothenberg & Tunney, P. J. Toelkes, Alan Diamond, Catherine J. DeBono and Robert E. Mangels for Plaintiff, Cross-defendant and Appellant.

Montgomery, Bottum, Regal & McNally, Peter R. Regal and Leonard S. Levy for Defendant, Cross-complainant and Appellant.

Tuttle & Taylor, Ronald C. Peterson and Wayne Stephen Braveman for Cross-complainant and Respondent.

William Haber for Cross-defendant and Respondent.

OPINION

**WOODS, J.**—USLIFE Savings and Loan Association (hereinafter USLIFE) has appealed from a summary judgment in favor of National Surety Corporation (hereinafter National). USLIFE had sought below to recover under the terms of a fidelity bond issued by National for losses sustained as a result of the alleged misconduct of Spitzer and Shaler, employees of USLIFE. Consolidated herewith is the protective appeal of National; if USLIFE had been successful in its appeal, National sought reversal of the summary judgment in favor of Spitzer and Shaler in National's action for indemnity.

USLIFE brought suit against National (erroneously sued as Fireman's Fund American Insurance Companies), alleging that certain losses were recoverable under a fidelity discovery bond covering losses resulting from fraudulent and dishonest acts discovered during the bond period. The bond in question, a copy of which was attached to plaintiff's complaint, covered losses discovered between January 3, 1973 and January 3, 1976. Summary judgment was granted to National on the ground that the losses occurred and were discovered during the effective period of a previous bond (issued by Fireman's Fund), covering USLIFE from 1970 to 1973, and that no new facts were discovered during the period of the bond issued by National.

During 1970 and 1971, Spitzer was president and chief executive officer of USLIFE. Shaler was manager of USLIFE's Hollywood branch office. USLIFE began participating in the Federally Insured Student Loan (FISL) Program. During this time, USLIFE became concerned that the FISL program was being operated by Shaler, with the support and assistance of Spitzer, in violation of numerous federal regulations. Both employees were terminated in early 1972, and USLIFE was audited by the Federal Home Loan Bank Board shortly thereafter. Their report, issued May 17, 1972, enumerated violations of law committed by Shaler, and apparently sanctioned by Spitzer, in the management and operation of the FISL program.

Although it is clear from the record that numerous acts were committed by Spitzer and Shaler resulting in substantial loss to USLIFE, and that such acts and loss were known to USLIFE in 1972, no claim under the 1970-1973 bond was presented. In 1974, the Federal Home Loan Bank Board issued its second audit report. That report concluded that Jane Shaler "was motivated to follow this course of action by her

need for money, and in all probability did receive kickbacks from the loan brokers," and further concluded that Jack Spitzer knew of Shaler's activity and was a party to her scheme. After receiving the 1974 report, USLIFE filed a claim supported by proof of loss with National, under the 1973-1976 bond, contending that it had not discovered until 1974 that its employees had received bribes and kickbacks.

The proof of loss summarized the fraudulent and dishonest acts of Spitzer and Shaler as follows:

"(1) making unauthorized loans under the HEW FISL program;

"(2) failing to comply with the regulations of HEW relating to the formalities required in processing and executing FISL applications and notes and the disbursal of student loan funds relative thereto;

"(3) making said loans in an aggregate amount in excess of $16 million, grossly exceeding the authorized aggregate limit set by USLIFE for its involvement in said program of $5 million;

"(4) making FISL loans to students attending vocational and trade schools in violation of specific instructions of USLIFE that said loans were to be made only to students attending four year colleges and universities;

"(5) accepting bribes and kickbacks from loan brokers in violation of state and federal law in return for making unauthorized FISL loans;

"(6) fraudulently concealing the nature and extent of the FISL loans being made by them from the other officers, employees, and directors of USLIFE;

"(7) fraudulently concealing and destroying USLIFE's records in order to avoid detection of their dishonest and fraudulent scheme;

"(8) deliberately aiding and abetting violations of applicable federal regulations regarding payments and acceptance of fees and commissions generated by loan brokers; and

"(9) conducting the FISL program in reckless disregard of the interests of USLIFE."

With the exception of paragraph (5) in the foregoing itemization, all of the conduct of the employees was known to USLIFE in 1972. USLIFE contends, however, that it did not understand, until the allegations of bribes and kickbacks were made, that the acts of Spitzer and Shaler "arose to the enormity of a fraud" and were covered by the bond.

National filed a motion for summary judgment, alleging that USLIFE did not suffer or discover any loss during the bond period. National alleged that, absent evidence of bribes and kickbacks, USLIFE had not presented a claim under the bond because it had discovered all the facts upon which it based its other allegations of fraudulent and dishonest acts prior to the bond period. The motion was supported by declarations of Shaler and Spitzer denying receipt of bribes or kickbacks and denying knowledge of any such receipt by each other. The lower court concluded that USLIFE could introduce no evidence in support of its allegations that Shaler or Spitzer had received bribes or kickbacks and that therefore no triable issue of fact existed with respect to those allegations.[1] The trial court explained that recovery under the 1973-1976 bond depended on USLIFE's ability to establish fraudulent activity on the part of the employees, which was discovered in 1974. If they could not prove the receipt of bribes or kickbacks, but were able to prove the other eight allegations set out in the proof of loss, and were able to establish that the earlier activity amounted to fraud, they would necessarily lose at trial, having brought suit under the later bond only.

USLIFE raises the following contentions on appeal:

That the question of when an insured should reasonably have discovered that the acts of its employees were fraudulent raises a triable issue of fact.

That the terms of the 1973 bond are ambiguous.

---

[1] The procedural history of this case is somewhat more complicated than is reflected in this opinion. As noted, USLIFE sued National under the bond. National filed a cross-complaint seeking indemnity from Spitzer and Shaler. Spitzer filed a cross-complaint against USLIFE for attorney's fees. In addition to the motion for summary judgment filed by National, Spitzer and Shaler each filed motions for summary judgment, also seeking summary adjudication of the fact that they had not received bribes or kickbacks in connection with the FISL program. The trial court granted National's motion, and granted the motions of Spitzer and Shaler for summary adjudication of the kickback issue.

That the 1970 bond and the 1973 bond evidence a continuing relationship between USLIFE and National.

That National's defense to coverage based on the allegation that discovery occurred prior to the bonding period is barred by the doctrines of waiver and estoppel.

That USLIFE introduced evidence in the court below sufficient to raise a triable issue of fact as to whether Shaler had accepted bribes and kickbacks, and whether Spitzer was aware of such dishonest activity.

I

■■ We call to the attention of the parties in this action material in the USLIFE brief which was not considered by this court in arriving at its opinion:

(1) Those recitations of fact that do not have citations to the voluminous record, which is in excess of 6,500 pages (*Fox* v. *Erickson* (1950) 99 Cal.App.2d 740, 742 [222 P.2d 452]; Cal. Rules of Court, rule 15);

(2) The allegation in the brief that "additional support for the following factual statement is contained in voluminous documentation and deposition testimony which was not directly at issue below and, therefore, not made a part of this record." An appellate court is confined in its review to the proceedings which took place in the court below and are brought up for review in a properly prepared record on appeal. (*Lady* v. *Barrett* (1941) 43 Cal.App.2d 685, 687 [111 P.2d 702]; Cal. Rules of Court, rule 13);

(3) All citations to evidence expressly ruled inadmissible by the trial court. Facts, events, documents or other matters urged by a party which are not admitted into evidence cannot be included in the record on appeal. They are outside the scope of review (*Oldenkott* v. *American Electric, Inc.* (1971) 14 Cal.App.3d 198, 207 [92 Cal.Rptr. 127]).

Within the limitations posed by the USLIFE brief, we proceed to discuss the issues it raises.

## II

■ USLIFE contends that, although it knew of the acts of its employees prior to 1973, it did not understand that those acts were fraudulent, and therefore covered by the bond, until 1974, when it first received allegations of bribes and kickbacks. USLIFE argues that the reasonableness of this realization is a question of fact which should have been presented to the jury. The cases relied on by USLIFE do not support its position under the facts of this case. The bond in question here insured the employer against loss "through any dishonest or fraudulent act of any of the employees. . . ." The bond requires that "[a]t the earliest practicable moment after discovery of any loss hereunder the insured shall give the underwriter written notice. . . ." Under such a policy, commonly known as a "discovery bond," a loss is said to have been discovered whenever the employer learns of dishonest or fraudulent *acts* committed by its employees. (See, e.g., *Pacific Coast A. Bureau* v. *Insurance Co.* (1931) 115 Cal.App. 583, 587 [2 P.2d 218].) Here, the record establishes that a multimillion dollar loss occurred to USLIFE prior to the issuance of the 1973 bond. Further, USLIFE had knowledge of fraudulent or dishonest acts on the part of its employees during that period, as evidenced by the eight enumerated items set out in the proof of loss. USLIFE's contention that it did not understand the dishonest or fraudulent nature of the employees' conduct prior to receipt of the 1974 report is untenable, in view of the nature of the conduct described in the 1972 report, resulting in the employees' termination.

USLIFE cites authority for the proposition that an employer need not file a claim under a fidelity bond until possessed of sufficient information to assure that some specific fraudulent or dishonest conduct was in fact engaged in. However, those cases stand for the proposition that an employer need not act on a hunch or suspicion, but may wait until there are concrete facts from which to conclude that liability exists under a bond. USLIFE is in the opposite position. USLIFE had all of the facts at its disposal, but contends that it need not have acted until it later acquired the suspicion that bond coverage applied. The law requires that the employer give notice to the bonding company as soon as possible after discovery of fraudulent acts. (*American Surety Company* v. *Pauly* (1898) 170 U.S. 133, 147 [42 L.Ed. 977, 982-983, 18 S.Ct. 552]; *Perkins* v. *Clinton State Bank* (8th Cir. 1979) 593 F.2d 327, 334; *Pellas* v. *Ocean Acc. & Guar. Corp.* (1938) 24 Cal.App.2d 528, 533-534

[75 P.2d 635]; see also *Tresemer* v. *Barke* (1978) 86 Cal.App.3d 656, 663 [150 Cal.Rptr. 384].)

"The well established rule is that the insured under a blanket employee's fidelity bond is not bound to give notice until he has acquired knowledge of some specific fraudulent or dishonest act.... [¶] 'An oversimplification of the definition [of discovery] is that when the insured learns the facts constituting the alleged dishonesty his prior suspicions, if any, are converted to knowledge which he cannot ignore and which constitutes "discovery."' (*Alfalfa Electric Cooperative, Inc.* v. *Travelers Indemnity Co.*, 376 F. Supp. at 906.)" (*Perkins* v. *Clinton State Bank, supra*, 593 F.2d at pp. 334-335.)

Therefore, USLIFE may recover under the 1973 bond only if it can establish that a new fact was discovered during the bonding period. It may not prevail by arguing that it knew all of the facts before the bond was issued, but did not understand them until later. A contrary holding would so expand the meaning of the term "discovery of loss" as to expose a bonding company to virtually limitless liability.

Nor is there support in the law for USLIFE's contention that, prior to receipt of the allegations concerning bribes and kickbacks, it did not realize that the conduct of its employees came within the provisions of the policy concerning "dishonest or fraudulent" acts, and is therefore excused from its failure to file an earlier claim. Although ignorance of the cause of a loss, or the fact that a loss has occurred, may excuse late claim filing, ignorance of policy provisions does not. (*Aetna Casualty & Surety Co.* v. *Richmond* (1977) 76 Cal.App.3d 645, 652 [143 Cal.Rptr. 75].)[2]

USLIFE's contention that there remains a factual issue as to the reasonableness of its conduct is not well taken. It was required to establish below that, during the 1973 policy period, it discovered some new fraudulent or dishonest act on which to base a claim. As we will discuss hereinbelow, it was unable to do so.

### III

USLIFE next contends that the term "discovery" contained within the indemnity bond is ambiguous and that such an ambiguity must be

[2]Annotation, Fidelity Bond—Notice of Loss (1952) 23 A.L.R.2d 1065-1102; Annotation, Property Insurance—Time Requirements (1969) 24 A.L.R.3d 1007-1064.)

interpreted in favor of the insured. USLIFE relies on *Continental Ins. Co. v. Morgan, Olmstead, Kennedy & Gardner, Inc.* (1978) 83 Cal. App.3d 593 [148 Cal.Rptr. 57]. In discussing two fidelity bonds covering the insured at different periods, the court observed: "Each instrument states the period of coverage in essentially the same phraseology of losses whenever incurred but 'discovered' after a specific date. As the trial court expressly found, that language can be construed to mean that a loss is discovered when the facts giving rise to a later claim are discovered by the insured, when a claim is made against the insured that may result in judgment, or when the claim is settled or a judgment is paid." (*Id.*, at p. 607.)

Although that court found the term "discovered" to be susceptible to a broad definition, it did so under the unusual facts of that case. At issue was the bonding companies' liability for attorney's fees and court costs incurred by the insured in defending a lawsuit. Under those circumstances, the covered loss may be said to have been discovered during the period of the first bond (when the insured learned that its employee had dealt in stolen bonds) or the second bond (when attorney's fees and costs were incurred in defending a lawsuit arising therefrom). Absent such unusual circumstances, the courts in California and elsewhere have consistently held that a loss is discovered when the insured acquires knowledge of any fraudulent or dishonest act resulting in loss. (See *American Surety Company v. Pauly, supra,* 170 U.S. 133; *National Surety Co. v. Western Pac. Ry. Co.* (9th Cir. 1912) 200 F. 675, 680-681; *Gilmour v. Standard Surety & Casualty Co.* (1935) 292 Mass. 205 [197 N.E. 673]; *Pellas v. Ocean Acc. & Guar. Corp., supra,* 24 Cal.App.2d at pp. 533-534; *Pacific Coast A. Bureau v. Insurance Co., supra,* 115 Cal.App. at pp. 586-587; *L. A. Athletic Club v. U. S. Fidelity etc. Co.* (1919) 41 Cal.App. 439, 446 [183 P. 174]; and cases cited at 23 A.L.R.2d 1065, 1076-1080, *supra.*)

The term "discovery" cannot be interpreted to include USLIFE's proposed definition, that is, a later understanding of previously known facts or a later recognition of coverage within the terms of the fidelity bond.

## IV

USLIFE next contends that "the court below further erred in failing to consider that petitioner and affiliates of Fireman's Fund American Insurance Companies (hereinafter 'FFAIC') had a continuous relationship from the time that petitioner first sustained its loss and continuing

through the period when petitioner first discovered that its loss was within its fidelity coverage." USLIFE's contention is erroneous. USLIFE did not assert below that there was continuous coverage from 1970 through 1976; therefore, the court was not given an opportunity to rule on that allegation. As previously noted, the complaint was brought on the 1973 bond issued by National. No mention was made in the complaint of the 1970 bond issued by its affiliate, Fireman's Fund. At the hearing in the court below, the trial judge asked, "Why didn't you file—maybe you did—a cause of action under the previous bond to cover yourself?" USLIFE's counsel answered, "Because we didn't discover it. We did not believe we discovered the loss under the previous period of the bond." The court then explained that USLIFE could have pleaded in the alternative, setting out a claim under the 1973 bond on its discovery theory and a claim under the 1970 bond based on acts which occurred during the coverage of that bond. USLIFE's counsel explained that they believed their only cause of action existed under the 1973-1976 bond and that they therefore chose to pursue a claim on that policy only.

USLIFE cannot now claim that the trial court erred in refusing to consider continuous coverage under both bonds, or to treat the second bond as a renewal of the first, when it rejected such a theory at the trial court. ■ "[O]ne whose conduct induces or invites the commission of error by the trial court is estopped afterward from taking advantage of such error." (*Abbott v. Cavalli* (1931) 114 Cal.App. 379, 383 [300 P. 67].)

Further, the 1973 National bond was not written as a renewal of the 1973 Fireman's Fund bond. On the contrary, it expressly states that any coverage provided under prior bonds is terminated upon its effective date. ■ Where a bond contains no language to the effect that it is a continuation of a prior bond, it is an independent contract and will not be deemed to provide continuing coverage from a prior bonding period. (*I. Upham Co. v. United States etc. Co.* (1922) 59 Cal.App. 606, 608-609 [211 P. 809].)

## V

■ USLIFE asserts that National's affirmative defense to coverage, based on the allegation that discovery occurred prior to the bonding period, is barred by the doctrines of waiver and estoppel. USLIFE first gave notice of loss to National on November 9, 1974. A proof of loss

was submitted by USLIFE to National on April 28, 1975. Approximately 16 months passed before National denied the claim.

While it is true that an insurer may, by its conduct, waive the right to assert a defense to a policy, USLIFE cites no evidence in the record in support of such a waiver. In the cases relied on by USLIFE, the insurer's conduct, demonstrating an intent to waive a requirement of the policy, was evident. For example, in *Page* v. *Washington Mut. Life Assn.* (1942) 20 Cal.2d 234, 240-241 [125 P.2d 20], the insurer, by frequently accepting late premium payments, was deemed to have waived the timely payment requirement of its policy. No conduct on the part of National indicates an intent to waive. Further, what is at issue here is not compliance with a procedural policy provision, but rather the requirement that USLIFE establish that an act occurred within the coverage of the policy. The requirement that an insurer pay only for those losses it has agreed to cover would not be deemed waived solely on evidence of a 16-month delay in denying a claim.

Nor does the record support the contention of USLIFE that National is estopped to deny coverage by virtue of the delay. ▆ "The essence of an estoppel, ... is that the party to be estopped has by false language or conduct led another to do that which he would not otherwise have done and as a result thereof that he has suffered injury. [Citations.]" (*In re Lisa R.* (1975) 13 Cal.3d 636, 645 [119 Cal.Rptr. 475, 532 P.2d 123, 90 A.L.R.3d 1017].) USLIFE does not demonstrate any manner in which it relied on or was injured by the delay in responding to its claim.

## VI

Finally, USLIFE contends that it introduced evidence in the court below sufficient to raise a triable issue of fact as to whether Shaler had accepted bribes and kickbacks and whether Spitzer was aware of such dishonest activity. As we observed earlier in this opinion, this statement is simply untrue. Although appellant's opening brief cites numerous examples of evidence which would tend to support USLIFE's position, in each instance the evidence cited was either ruled inadmissible by the trial court or is inaccurately paraphrased in the brief. When we ignore all of the foregoing, there is nothing left. The trial judge exhaustively analyzed voluminous documentary evidence offered by USLIFE. He explained his evidentiary rulings and gave USLIFE several opportunities to cure the weaknesses and defects in the documents presented. When

no cure was effected after numerous attempts, the trial court concluded that USLIFE had no admissible evidence to support its position.

There being no evidence to present to a jury on the issue of whether Shaler or Spitzer received bribes and kickbacks, the trial court properly granted National's motion. ■ "In considering a motion for summary judgment the trial court must determine whether the defendant has by affidavit presented any facts that give rise to a triable issue. [Citation.] The court does not resolve conflicting factual allegations, for the purpose of the procedure is to discover whether the parties have evidence requiring assessment at a trial." (*R. D. Reeder Lathing Co.* v. *Allen* (1967) 66 Cal.2d 373, 376 [57 Cal.Rptr. 841, 425 P.2d 785].)

"The opponent of a motion for summary judgment cannot rely on his pleadings, but must make an independent showing that he has 'sufficient proof of the matters alleged to raise an issuable question of fact in regard thereto.'" (*Cullincini* v. *Deming* (1975) 53 Cal.App.3d 908, 913 [126 Cal.Rptr. 427].)

The trial court properly granted the motion of National for summary judgment. The judgment is affirmed. Respondent National to recover costs on appeal. The appeal of National Surety Corporation is dismissed as moot.

Kingsley, Acting P. J., and McClosky, J., concurred.

The petition of plaintiff and appellant for a hearing by the Supreme Court was denied March 25, 1981.